## W. T. CONNER V. BELLE HAWKINS.

### (Case No. 1953.)

1. COMMUNITY PROPERTY—CROPS RAISED ON SEPARATE ESTATE.—Crops raised on the separate estate of the wife are community property, and, so far as they enter into the purchase of other property it belongs to the community estate. See opinion for evidence establishing the community character of property.

2. EXEMPT PROPERTY—CREDITORS.—The right of a debtor to dispose of his exempt property and give a good title, as against his creditors, is well established. (Authorities cited.)

3. SAME.—An article of furniture is not exempt from execution unless it is in the actual or constructive use of the owner as part of his household furniture, or is destined to be so used. If the exception is claimed before the article is put into use by the owner as household furniture, a design to use it as such must have been previously formed by him, and must have continued down to the time at which the exemption is claimed.

4. SAME—GIFT.—If a party claims title to property by gift, and by reason of its being exempt to his donor who has never made such use of the property as en- titled him to its exemption, he must show an intention of the donor to make such use of it, existing previous to the conveyance to himself.

5. SAME.—If a donor purchased property with the intention of giving it away and carried his intention into immediate effect, the property was at no time exempt to him, and the party to whom it was given, took it subject to execution for his donor's previous indebtedness.

APPEAL from Morris.    Tried below before the Hon. S. P. Pounders, Special Judge.

This case was before the supreme court once before, and was reported in 64 Tex., 545.    The necessary facts are stated in the opinion.

*G. T. Todd, J. M. Moore* and *J. L. Sheppard,* for appellant.

No briefs on file for appellee.

WILLIE, CHIEF JUSTICE—The third assignment of error is as follows: "The verdict is contrary to the evidence and the law, as the evidence shows that the piano in controversy was the community property of A. J. and E. R. Hawkins, parents of defendants; and the said E. R. Hawkins, being insolvent at the time of the alleged gift of said piano to defendant, said gift is void as to plaintiffs."

This assignment raises two questions: First, was the piano the community property of E. R. Hawkins and wife, or the separate property of the latter?    Second, if community property, did the gift of it to Miss Belle Hawkins, the claimant, vest in her a title which placed the property beyond the reach of the prior creditors of E. R. Hawkins?

The facts bearing upon these questions are about these in substance:

E. R. Hawkins was the head of a family, consisting of himself, his wife, and some children, of whom the appellee was one, and the family lived at Daingerfield, in Morris county, Texas.    In March, 1880, Hawkins went to St. Louis, Missouri, having previously shipped to that place a lot of cotton, one bale of which had been raised on land the separate property of his wife.    He took with him also $80.00, which he had received from his wife, and which she claimed as her separate property.    He was instructed by his wife to use the money and bale of cotton in the purchase of a piano for the claimant.    While at St. Louis, he bought the piano in controversy for about $167, of which $60.00 or $70.00 were paid in cash, and the balance in a draft upon the commission merchants to whom the cotton was consigned.    It does not appear that the cash payment was out of the $80.00 handed Hawkins by his wife, or that the draft was paid from the proceeds of the one bale claimed by her, or out of his own cotton, or was an advance made by his commission merchants over and above the value of the cotton placed by Hawkins in their hands.    It seems, however, that Hawkins overdrew his deposits with the commission merchant about $170, in which the draft drawn on account of the piano may have been included.    Mrs. Hawkins intended the piano for her daughter, and gave it to her, supposing the money to be paid for it was her separate

property.   It seems when the piano reached Daingerfield from St. Louis, it was placed, and afterwards continuously kept, in the bedroom of the claimant.  She always claimed it as her own, and exercised acts· of exclusive ownership over it.   Miss Hawkins became of age in 1880. Mrs. Hawkins received a considerable amount of property from her father living in Georgia, some fifteen years before she testified in this case; out of this the money came which bought the piano.  E. R. Hawkins stated that the amount received by Mrs. H. from her father was about $1,400, and that he invested all her money in lands and other property.

As to the first question, the bale of cotton contributed by Mrs. Hawkins was raised on her land, and was therefore community property.   So far as it entered into the purchase of the piano, this became also community estate.  Its value was proved to be at least $78.00, and to that extent the piano was not separate property of Mrs. Hawkins.  Of the $80.00 sent by Mrs. Hawkins, in cash, to St. Louis, no more than $70.00, if any at all, went towards paying for the piano.   There is still left $19.00 to complete the purchase money; and if this was ever paid at all, it was paid out of the other cotton shipped by Hawkins which was confessedly community property.   But the status of the $80.00 is left in great doubt by the evidence.   Mrs. Hawkins does not show whether she received from her father the identical money she sent to St. Louis, and had kept it for fifteen years, or whether it was the proceeds of property received from her father and invested by her husband in land for her benefit.

Hawkins himself proves that he invested all the money she received from her father in lands; and from his statement about the crops raised upon them, leaves the inference that the $80.00 was part of the profits derived from these lands, and community property.   Hence, the case before the jury was that of $97.00 of community property traced into the purchase of the piano, and $70.00, to speak most favorably for the claimant, left in great doubt.   If, under such proof, they had found the piano, or any part of it, the separate property of Mrs. Hawkins, their verdict should have been set aside as against law and evidence.   Smith v. Bailey, Tyler Term, 1886.

But, if community property, did the gift of it to Miss Belle Hawkins, under the circumstances of this case, place it beyond the reach of her father's creditors?   The solution of this question will depend upon whether or not, at the time of the gift, the piano was exempt from execution as part of the household furniture of E. R. Hawkins.   The owner of exempt property may convey it by gift or sale free from the

claims of his creditors. He does not defraud them, because he places beyond their reach no piece of property which, but for the conveyance, would be subject to forced sale. The right of a debtor to dispose of his exempt property, and give a good title as against his creditors, is now firmly established and needs no further discussion. Carhart *v.* Harshaw, 45 Wis., 340; Delashmut *v.* Trau, 44 Ia., 613; Burdge *v.* Bolin and wife, 6 N. E. Rep., 140.

For the purposes of this case, it will not be necessary to decide whether or not a piano may, under a proper state of case, be so exempted as part of the household furniture of a family. The assignment of error under consideration is fully sustained if, under the facts of this case, the exemption could not have been claimed by E. R. Hawkins, under whom the appellee derived her title. An article is not exempt from execution, merely because it is of that species of property generally used as part of the household furniture of a family. It must be in the actual or constructive use of the owner as such, or destined to be so used by him. Goods of this character are not exempt to a merchant, who keeps them solely for the purpose of being sold in the usual course of trade, or to one who buys them with no other object than that of selling or giving them away.

If the exemption is claimed before the article is put into use by the owner as household furniture, a design to use it as such must have been previously formed by the owner, and must have continued down to the time at which the exemption is claimed. If another party claims title to the property by gift and by reason of its being exempt to his donor at the time it was conveyed to the claimant, and such donor has never used the property as household furniture, he must show an intention of the donor to use it as such, existing previous to the conveyance to himself. An intention to keep and use as household furniture, and one to give away immediately to another, cannot co-exist at the time of purchasing a piece of property. If the design to give away is shown to exist at the time, and it is carried into immediate effect, the property has at no time been exempt to the purchaser, and the party to whom it is given, takes it subject to execution for his donor's previous indebtedness.

Here the evidence shows that both Hawkins and his wife intended that the piano should become the property of the claimant the moment it should be purchased. This intention was carried out as far as possible, and the purchase and the gift were simultaneous with each other. In furtherance of this design, the piano was sent to Dangerfield, placed in the claimant's bedroom, and ever afterwards remained there in her possession, under claim of title, accompanied by acts of

exclusive ownership. As between herself and her father, the title to the piano certainly vested in her upon delivery, and there is not a particle of proof to show that, between the date of the purchase, when the gift was made, and the date of delivery, there was any design on the part of either Hawkins or his wife to claim the piano as household furniture in opposition to the ownership and possession of their daugh - ter. In fact, the proof is directly to the contrary, for, from the date of the purchase down to the consummation of the gift to Miss Hawk-- ins, it plainly appears that her parents considered her as owner of the piano, and had no other design in reference to the same except that it remain her individual property.

As the piano became the community-property of Hawkins and wife so soon as purchased, and was never designed by them to be claimed as their household furniture, but to be given to the claimant, and was actually so given, the gift was void against the prior creditors of Hawkins, and the assignment of error is well taken. We have not noticed the question of limitation raised in the case, because, though the jury may have been justified in finding for the claimant upon that issue, there is nothing to show that they did, and they may have based their verdict upon the erroneous conclusion that the piano was exempt to E. R. Hawkins at the time he gave it to his daughter. As to the question of costs, all such costs as have accrued by reason of this appeal and of the former one taken in this case, must, in accord- ance with the orders of this court, be taxed against the claimant.

For the errors indicated, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 5, 1886.]