Nancy Marsteller KING, Appellant,

v.

Edwin Brown KING, Appellee.

No. 01–82–0820–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 20, 1983.
Rehearing Denied Dec. 8, 1983.

Harriett E. Hubacker, Houston, for appellant.

Otto D. Hewitt, III, Galveston, for appellee.

Before JACK SMITH, WARREN and DOYLE, JJ.

## OPINION

JACK SMITH, Justice.

This is a divorce case in which the appellant wife alleges that the trial court erred in the characterization and division of property. Her basic contention is that the trial court erred in characterizing and awarding 155 shares of stock to the appellee as his separate property. She asserts that because of this error the trial court's judgment resulted in a manifestly unjust and inequitable division of property.

The 155 shares of Southern California Chemical Corp. stock, which Mrs. King states should not have been awarded to Mr. Ed King as his separate property, was acquired in 1960 when the parties lived in California. Mr. King testified that he had an opportunity to receive a substantial promotion by moving to Peru. He stated that his brother, Dan, promised to give him the 155 shares of stock if he would move to California and take over the management of the Marigg Land Corporation, instead of going to Peru. His brother owned stock in the Marigg company and had much to gain if Ed King took over its management. Mr. King also testified that he accepted his brother's offer, and subsequent to the move to California, his brother transferred the 155 shares of chemical stock to him.

Mr. King further testified that the book net worth of the chemical company at the time of trial was $120,000. He stated that the company was essentially bankrupt and could not continue business without the financial support of another stockholder, Associated Metals and Minerals Company. He stated that Associated basically owns and controls the chemical company because of loans made by or guaranteed by Associated to the chemical company. He also stated Associated had loaned the chemical company $1,567,000 and had guaranteed loans made by the chemical company in the additional sum of $772,000.

Mr. King acknowledged that at one time a $6,000,000 offer had been made to purchase the assets of the chemical company. However, he pointed out this was for the purchase of the assets only and that the buyer had "backed off" the offer. He stated that at the time the offer was made the company had liabilities of somewhere between 2 and 4 million dollars. He further stated that since the time the offer had been made, the company had sustained a loss of $400,000 to $700,000 because of a fire in one of its units, and had lost a major tax case which resulted in the company having to remove substantial assets from its corpo-

rate books. He also stated that two of the company's three units were losing money and that as a result of these losses the book value of the company had dropped from $953,000 in April, 1981 to $129,000 in March, 1983. He explained that he and Mrs. King had also loaned the company $115,000, but stated that if Associated did not continue to support the chemical company or if Associated decided to call its loans, the chemical company would be essentially bankrupt.

Ed King's brother, Tom, also testified that their brother Dan had a plan to get Ed King to move out to California to live. He stated it involved the exchange of stock in the Southern California Chemical Company, but that he did not know the terms.

Mrs. King testified the stock was purchased with money given to them by her aunt in 1959. Mr. King disputed this and stated that the money given to them by her aunt was used by the Kings for living expenses and not to purchase the stock in question.

The trial court found that the chemical company stock was a gift and awarded the stock to Mr. King as his separate property. In three points of error, Mrs. King asserts that the stock was not a gift because, (1) the evidence does not support such a finding, (2) the evidence proves conclusively, as matter of law, that consideration was paid by the community, and (3) the finding that no consideration was paid for the purchase of the stock is against the great weight and preponderance of the evidence. Mrs. King's fourth point of error is that the division of the property is manifestly unjust and inequitable.

■ It is well-settled law that the trial court is given wide discretion in making a division of the parties property and such division will not be disturbed on appeal unless the court has clearly abused its discretion. *Bell v. Bell*, 513 S.W.2d 20 (Tex. 1974). The fact that an asset has been mischaracterized as separate property does not in and of itself require a finding that there has been an improper or inequitable property division. Such mischaracterization must result in a manifestly unjust and un-

fair division of property, otherwise the mistake is harmless. *See, Humphrey v. Humphrey*, 593 S.W.2d 824 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd); *Law v. Law*, 517 S.W.2d 379 (Tex.Civ.App.—Austin 1974, writ dism'd); *Wilkerson v. Wilkerson*, 515 S.W.2d 52 (Tex.Civ.App.—Tyler 1974, no writ).

Mrs. King alleges that the trial court's failure to properly characterize the chemical stock resulted in a disproportionate division of property because the total value of the stock was $6,000,000. She states that since 155 shares of the stock was one-half of the stock of the chemical company, it should have a value of $3,000,000. She further reasons that since the stock had that value, this affected a disproportionate division of the property.

Although Mrs. King's reasoning appears logical, we do not agree with the conclusion she has reached. The trial court made no finding of facts concerning the value of the chemical company stock, and no request was made for findings of fact and conclusions of law to establish the stock's value. However, there is competent evidence in the record to support Mr. King's evaluation of the stock as being $120,000.

■ The only evidence in the record which supports Mrs. King's position is the testimony of Mr. King that at one time an offer of $6,000,000. was made for the assets for the chemical company. Mr. King's detailed testimony of the company's liabilities and substantial losses of the company since the time the offer was made to purchase the assets of the company is sufficient to rebut Mrs. King's allegations, and to support his own allegations that the company was worth only $120,000 at the time of trial. This would result in the 155 shares, which are one-half of the company stock, having a value of $60,000; and, if the stock had been classified as community and Mrs. King awarded one-half of the stock, its value would have been $30,000.

■ The parties in their respective briefs appear to agree that the community assets of the King's property, exclusive of the

stock, should be valued between $600,000 and $700,000. The parties also agree that the trial court awarded Mrs. King approximately 60% of the community assets and Mr. King approximately 40% of the assets. Thus, if the 155 shares of stock had been classified as community property rather than the separate property of Mr. King, and valued at $120,000., the value of the community property would have increased by $60,000 or approximately 10% of the total community property acquired by the Kings during their marriage. If we accept the parties' evaluation of the community property, other than the value of the stock, and look to the evidence to determine the values of the 155 shares of chemical stock, we find that the characterization of the stock as separate property resulted only in a few percentage points difference in the value of community property awarded to Mrs. King.

As heretofore mentioned, we note that no request was made for findings of fact and conclusions of law. We further note that in the court's final divorce decree, evaluations of community property assets were not placed on the King's cars, residence, furniture and household contents, real property and improvements located in Anchorage, Alaska, life insurance, retirement benefits, or other items such as sterling silver, silver, and oriental rugs.

Rule 434 of the Tex.R.Civ.P. provides that no judgment shall be reversed on appeal and a new trial ordered because the trial court has committed an error of law, unless the appellate court shall be of the opinion that the error committed was reasonably calculated to cause and probably did cause an improper judgment to be rendered. Hence, no presumption or prejudice arises from erroneous rulings of the trial court. *Walker v. Texas Employers' Ins. Ass'n*, 155 Tex. 617, 291 S.W.2d 298, 301 (1956). Rule 434 applies to divorce cases. *Smith v. Smith*, 620 S.W.2d 619 (Tex.Civ. App.—Dallas 1981, no writ).

■ It was Mrs. King's burden to show not only that an inequality in the division of the community property was manifestly unjust because of the mischaracterization of the property, but also that such inequality is of such substantial proportions that it constitutes an abuse of the trial court's discretion. *Mundy v. Mundy*, 653 S.W.2d 954 (Tex.App.—Dallas 1983, no writ). We hold that Mrs. King has failed to meet that burden.

■ Mrs. King also alleges that the court failed to consider the appellee's income, failed to account for the appellant's payment of taxes, failed to consider the respective earning power of the parties, and failed to consider that the community used appellant's separate funds while appellee's separate funds were reserved for himself, when it made a division of the property in the final decree.

■ In the instant case, the court found that its division of the property was just, right and equitable. In the absence of a showing to the contrary, we must presume that the trial court considered all of the evidence, including the circumstances of the parties, in its division of their property. *Huls v. Huls*, 616 S.W.2d 312 (Tex.Civ.App. —Houston [1st Dist.] 1981, no writ), and *Musslewhite v. Musslewhite*, 555 S.W.2d 894 (Tex.Civ.App.—Tyler 1977, writ dism'd).

Mrs. King also contends that the trial court abused its discretion by refusing to award Mrs. King any interest in the chemical corporation, and yet gave her a one-half interest in a $100,000 note which the corporation owes to the community estate. It is her position that sufficient cash assets exist in Mr. King's pension and retirement account to have awarded her cash rather than a one-half interest in the note. She urges that she should not have to take the risk for the future operation and possible loss of the chemical company's corporate assets.

■ We find no merit in this contention. The debt is owed to the community and although the company apparently is in financial straits, it is not an abuse of discretion to ask each of the parties to assume the risk of a possible loss of this asset. In addition, Mrs. King was awarded the right to demand payment of her share of the

note, unilaterally, after the expiration of two years from the date of the decree. No harm has been shown other than the appellant's assertion that she should not have to bear the risks of any future losses the company might suffer. We find this argument unpersuasive.

In three points of error, Mrs. King contends that the trial court erred in awarding the 155 shares of chemical stock to Mr. King as his separate property. As we have heretofore pointed out, if the trial court erred in its classification of the stock, the error was harmless. Section 3.63 of the Texas Family Code affords the trial court wide latitude and discretion in dividing the community estate of the parties upon dissolution of their marriage. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977). In reviewing the actions of the trial court, the appellate court will presume that the trial court exercised its discretion properly. The trial court's discretion will not be disturbed on appeal unless a clear abuse has been shown. *Vallone v. Vallone,* 644 S.W.2d 455 (Tex.1982).

We have carefully considered the entire record of this case to determine whether the trial court abused its discretion; we find no such abuse.

The judgment of the trial court is affirmed.