**Edward M. MCELWEE, Appellant,**

v.

**Mary Louise MCELWEE, Appellee.**

**No. 01–94–00456–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 2, 1995.

Rehearing Overruled Nov. 15, 1995.

Shawn Casey, Betty B. Homminga, Houston, for appellant.

Pamela E. George, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and ANDELL, J., also sitting.

## OPINION

HUTSON–DUNN, Justice.

Appellant, Edward M. McElwee, the respondent in the trial court below, appealed from a judgment of divorce and a property division. The three issues before this Court are: (1) whether the trial court erred in denying appellant's motion to recuse Judge Bill Elliott; (2) whether Judge Elliott was disqualified to hear the matter; and (3) whether the trial court committed reversible error in mischaracterizing community property as separate property of the appellee, Mary Louise McElwee. Because appellant has waived the issue of recusal and because appellant did not show Judge Elliott was disqualified, we affirm the trial court's denial of the motion to recuse and overrule appel-

lant's point of error regarding disqualification. Because the trial court's mischaracterization of community property materially affected the property division, we sustain appellant's second point of error. Finally, having found merit in appellant's arguments, we overrule appellee's cross-point.

## Summary of Facts

Edward M. McElwee (Edward) and Mary Louise McElwee (Mary) were married on October 8, 1949. At the time of their marriage, Edward worked as a United States Air Force jet fighter pilot and Mary attended college.

In 1982, Mary filed for divorce and employed Vern Thrower as her attorney. However, wishing to preserve the marriage, Mary reconciled with Edward, and the divorce action was dismissed. Mary filed for divorce, once again, in August 1991. Finding that Edward was guilty of cruel treatment toward Mary, the trial court rendered a judgment of divorce. Without including five properties which the court characterized as Mary's separate property, the court awarded approximately 60.8% of the community property to Mary and 39.2% to Edward.

## The Parties' Pleadings

Edward raises two points of error. In his first point of error, he argues the court erred in denying Edward's motion to recuse Judge Elliott. In the alternative, he argues Judge Elliott was disqualified to hear the matter. Mary argues that Judge Elliott was qualified to hear the case and should not have been recused.

In his second point of error, Edward argues the trial court erred by mischaracterizing community property as Mary's separate property. He argues this error requires reversal because it deprived him of his interest in a substantial portion of the community estate. In reply points two through four, Mary asserts that Edward waived error with respect to mischaracterization because he did not object to the trial court's characterization of the property and because he did not brief his points of error in an abuse of discretion standard. In reply points five through seven, Mary asserts that the trial court's error, if any, does not require reversal because,

despite any mischaracterization, the trial court's division was not an abuse of discretion. Mary also raises a cross-point asserting that she should be awarded damages because Edward took this appeal without sufficient cause and for delay pursuant to Texas Rule of Appellate Procedure 84.

## Analysis

■ Edward argues that Judge Elliott was either disqualified or should have recused himself because, eight years before this action was filed, Vern Thrower, the father of Associate Judge Lynn Thrower, allegedly filed divorce papers against Edward on behalf of Mary. Edward asserts a two-tiered approach to Judge Elliott's disqualification. First Edward asserts that Judge Thrower was disqualified because he had been a practicing attorney in his father's firm when his father filed Mary's divorce action against Edward. A judge is disqualified to hear a matter if: (1) he personally served as a lawyer in the matter or (2) a lawyer with whom he previously practiced law served as a lawyer in the matter. Tex.R.Civ.P. 18b(1)(a). Consequently, Judge Thrower would be disqualified because a lawyer with whom he previously practiced law, his father, served as an attorney in the matter.

Second, Edward attempts to impute Judge Thrower's disqualification to Judge Elliott, asserting that the relationship between a presiding judge and his personally appointed associate judge is as close and interdependent as the relationship between partners in a law firm.

■ A trial court's denial of a motion to recuse is reviewed on an abuse of discretion standard. *Petitt v. Laware*, 715 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Edward's point of error regarding disqualification, however, is raised for the first time on appeal, and therefore, is reviewed *de novo*.

■ Although he argues error both on grounds of disqualification and recusal, Edward waived the issue of recusal because his motion failed to comply with the mandates of the Texas Rules of Civil Procedure. Recusal may be waived if it is not raised by a proper motion. *Sun Exploration & Prod. Co v.*

*Jackson,* 729 S.W.2d 310, 315 (Tex.App.— Houston [1st Dist.] 1987), *rev'd on other grounds,* 783 S.W.2d 202 (Tex.1989); *Humble Exploration Co. v. Browning,* 677 S.W.2d 111, 114 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986); *Autry v. Autry,* 646 S.W.2d 586, 588 (Tex.App.—Tyler 1983, no writ); *Ex parte Fernandez,* 645 S.W.2d 636, 638 (Tex.App.—El Paso 1983, no writ). The rule requires that a motion for recusal "shall be verified and must state with particularity the grounds why the judge before whom the case is pending should not sit." Tex.R.Civ.P. 18a(a). If a party fails to comply, he waives his right to complain of a judge's failure to recuse himself. *See Gulf Maritime v. Towers,* 858 S.W.2d 556, 559–60 (Tex.App.—Beaumont 1993, writ denied) (hereinafter *"Gulf Maritime"*); *Humble Exploration Co.,* 677 S.W.2d at 114; *Autry,* 646 S.W.2d at 588; *Ex parte Fernandez,* 645 S.W.2d at 638. The motion must be made on personal knowledge, "set[ting] forth such facts as would be admissible in evidence provided that facts may be stated upon information and belief if the grounds of such belief are specifically stated." Tex.R.Civ.P. 18a. Edward admits that his motion to recuse was both sketchy and unverified. He did not comply with rule 18a, and waived his right to complain of the court's denial of his motion to recuse.

Nevertheless, Edward argues his motion was probably misnamed, and should have been urged as a motion to disqualify Judge Elliott. Unlike recusal, disqualification cannot be waived. *Sun Exploration & Prod. Co.,* 729 S.W.2d at 312; *see also Gamez v. State,* 737 S.W.2d 315, 317 (Tex.Cr.App. 1987). If a judge is disqualified under the Texas Constitution, he is without jurisdiction to hear the case, and therefore, any judgment he renders is void and a nullity. *Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982); *Gulf Maritime,* 858 S.W.2d at 559. Disqualification may be raised at any time. *See Buckholts Indep. Sch. Dist.,* 632 S.W.2d at 148. A trial court or an appellate court may raise the issue on its own motion. *See Lee v. State,* 555 S.W.2d 121, 122 (Tex.Crim.App.1977); *City of Houston v. Houston Lighting & Power Co.,* 530 S.W.2d 866, 868 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). Moreover, if the question of disqualification is unclear on appeal, an appellate court may abate the appeal and return the matter to the trial court for an evidentiary hearing on the issue. *See Sun Exploration & Prod. Co.,* 729 S.W.2d at 314; *Gamez v. State,* 644 S.W.2d 879, 880 (Tex.App.—San Antonio 1982), *aff'd,* 737 S.W.2d 315 (Tex.Crim.App. 1987).

There are three constitutional grounds for disqualification in a civil case:

Judges shall disqualify themselves in all proceedings in which:

(a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter; or

(b) they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy; or

(c) either of the parties may be related to them by affinity or consanguinity within the third degree.

Tex.R.Civ.P. 18b(1) (Vernon Supp.1995). These are the sole constitutional grounds for disqualification which cannot be waived.[1]

---

1. The Texas Constitution states three circumstances in which a judge is disqualified from sitting in a case. Article V, section 11 states that "[n]o judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case." Tex. Const. art. V, § 11. Two statutes codify this mandate. The Government Code provides that a judge is disqualified from sitting in cases in which the judge is interested, or in which he is related to either of the parties within the third degree of consanguinity or affinity, or in which the judge has served as counsel in the case. Tex.Gov't Code Ann. § 21.005 (Vernon Supp.1995). The Code of Criminal Procedure provides that a judge is disqualified when the judge may be the injured party, or when he has served as counsel for either the state or the accused, or when the judge is connected with either the state or the accused by consanguinity or affinity within the third degree. Tex.Code Crim.P.Ann. art. 30.01 (Vernon Supp.1995).

Edward has not suggested that Judge Elliott has an interest in the matter, nor has he suggested the judge is related to either party. Consequently, his argument must rest upon rule 18b(1)(a). Judge Elliott has neither served as a lawyer in the matter, nor has he previously practiced law with an attorney who served as a lawyer in the matter. Appellant seeks to disqualify Judge Elliott because Judge Thrower previously practiced law with a person who served as a lawyer in the matter. The argument does not fit the rule. Therefore, we find Judge Elliott was not disqualified from hearing the case.

We overrule appellant's first point of error.

In point of error two, Edward argues the trial court erred by mischaracterizing certain community properties as Mary's separate property. Edward argues the evidence was legally insufficient, or in the alternative factually insufficient, to rebut the presumption that the property was community property. The five properties in question are: (1) a USAA Gold Fund Mutual Fund Account held in Mary's name and valued at approximately $7,553.54; (2) a Savings of America account listed in Mary's name and valued at approximately $4,489.73; (3) a Savings of America account in the name of Mary or Beulah Hoffpauir and valued at approximately $2,796.96; (4) a Savings of America account listed in Mary's name and valued at approximately $8,971.37; and (5) an America United Life annuity with a monthly payout of $154.00.

Edward asserts the court has erred on three grounds. First, he argues Mary did not rebut the community property presumption because she failed to trace and clearly identify any property she claimed to be separate. Second, he claims that all five accounts were created with money from Mary's disability payments, which are community property as a matter of law. Finally, he claims that, even if some of the money in the accounts was separate property, any interest accruing on separate property is community property as a matter of law. Moreover, he asserts that the error was harmful because separate property cannot be considered in making a just and right division of the marital estate.

Mary argues that Edward waived any error in the characterization of the property because he neither objected to the court's characterization of the property at rendition nor raised the error in his motion for new trial. In the alternative, she argues that any error was harmless because the division of property was not an abuse of discretion, but was just and right.

 As a preliminary matter, Edward did not waive his point of error regarding mischaracterization. Generally, to preserve error for appellate review, a party must present a timely request, objection, or motion to the trial court, stating the grounds for the ruling desired. Tex.R.App.P. 52(a). However, a party complaining of factual or legal insufficiency points on appeal from a nonjury trial is not required to comply with rule 52(a). Tex.R.App.P. 52(d). Edward raised his second point of error based on both legal and factual sufficiency of the evidence to support the trial court's characterization and division of property. Therefore, we will address the merits of his argument.

 Article XVI, section 15 of the Texas Constitution provides that all of a wife's property, owned or claimed by her before marriage or acquired after marriage by gift, devise, or descent shall be her separate property. Tex. Const. art. XVI, § 15. The Family Code extended this definition to a husband's property.[2] This constitutional definition of separate property is exclusive and may not be enlarged by legislative action. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex.1977). A court may not decree that the separate property of one spouse

---

**2.** Section 5.01 of the Family Code provides:

§ 5.01. Marital Property Characterized
(a) A spouse's separate property consists of:
(1) the property owned or claimed by the spouse before marriage;
(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.
(b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.
Tex.Fam.Code Ann. § 5.01 (Vernon 1993).

shall become the separate property of the other spouse because the nature of separate property is determined by the Constitution, rather than by what is "just and right." *Eggemeyer*, 554 S.W.2d at 140.

The Family Code codifies the constitutional presumption that all property possessed by a husband and wife at the time of the dissolution of their marriage is community property. TEX.FAM.CODE ANN. § 5.02 (Vernon Supp.1995). The party asserting that property is separate property bears the burden of rebutting the community property presumption by clear and convincing evidence. TEX.FAM.CODE ANN. § 5.02 (Vernon 1993); *Wilson v. Wilson*, 145 Tex. 607, 201 S.W.2d 226, 227 (1947). To rebut the presumption, a spouse must generally trace and clearly identify property claimed as separate property. *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex.1973); *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965). If the evidence shows that "separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption prevails." *McKinley*, 496 S.W.2d at 543.

The issue of whether property is separate or community property is determined by the facts which, according to rules of law, give character to the property. *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 568 (1961). Mere testimony that property was purchased with separate property funds, without any tracing of the funds, is generally insufficient to rebut the presumption. *See Schmeltz v. Garey*, 49 Tex. 49, 60–61 (Tex. 1878).

Applying the above tenets, we must consider the evidence related to the nature of the property in question. Mary testified that the accounts at issue were created with her disability income, which was derived from benefits provided by her employer, and with proceeds from the sale of timber off of her separate property. Her disability income was derived from benefits provided by her employer. Between 1987 and November 1993, Mary received $1500 each month, contingent only upon an annual medical examination. Mary testified that the three Savings of America accounts were created with money from her disability pay. The American United Life Annuity was also a disability benefit provided by Mary's employer. However, the evidence is conflicting regarding the source of the USAA Gold Fund mutual fund. While Mary's inventory and testimony on direct examination reflect that the account was created with the proceeds from the sale of timber off of her separate property, she testified on cross-examination that the USAA Gold Fund account and the three Savings of America accounts were created with her disability pay. Nevertheless, the question giving rise to her cross-examination testimony was somewhat confusing. For purposes of this opinion, we presume that Mary clearly claims the USAA Gold Fund mutual fund was created with the proceeds from the sale of timber taken from her separate property.

Matured private retirement, annuity and pension benefits earned by a spouse during marriage are part of the community estate. *See Allard v. Frech*, 754 S.W.2d 111, 114 (Tex.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Taggart v. Taggart*, 552 S.W.2d 422, 423 (Tex.1977); *Cearley v. Cearley*, 544 S.W.2d 661, 662 (Tex.1976). Disability plans which are part of an employee benefit package are also community property. *Ex parte Burson*, 615 S.W.2d 192, 194 n. 2 (Tex.1981); *Marshall v. Marshall*, 511 S.W.2d 72, 74 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). Hence, Mary's disability income was community property.[3]

In addition, the proceeds from the sale of timber off of Mary's separate property were also community property. Rents and revenues from separate property

---

**3.** Section 5.01 of the Family Code provides that recoveries for personal injuries sustained during the marriage are separate property unless the recovery is for loss of earning capacity. TEX.FAM. CODE ANN. § 5.01(a)(3) (Vernon 1993). This Court has already held that disability retirement benefits are not recoveries for personal injuries, but are earned property rights. *Marshall*, 511 S.W.2d at 74. Mary's disability income is also part of the "bundle of benefits" provided by her employer. *Id.*

are community property. *See Moss v. Gibbs,* 370 S.W.2d 452, 454 (Tex.1963). Like crops, timber grown on separate property is community property. *White v. Lynch,* 26 Tex. 195, 196 (1862) (ruling that lumber was community property, despite the fact that it was sawed at a separate property mill by separate property labor); *see also Connor v. Hawkins,* 66 Tex. 639, 2 S.W. 520, 521 (1886); *De Blane v. Lynch,* 23 Tex. 25, 27 (1859).

Therefore, both the proceeds from the timber and the disability benefits were community property. Consequently, the USAA Gold Fund mutual fund and the three Savings of America accounts were community property because they were created with community property. The American United Life Annuity was community property because it was a disability benefit which matured during the marriage. The trial court erred in ruling that these five accounts were Mary's separate property.

▆▆▆▆▆ Trial courts have broad discretion in making a "just and right"[4] division of the community estate, and this discretion is not disturbed on appeal unless a clear abuse of discretion is shown. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). When a court mischaracterizes *separate* property as *community* property, the error requires reversal because the subsequent division divests a spouse of his or her separate property. *Eggemeyer,* 554 S.W.2d at 140.

▆▆▆▆▆ The issue of whether a court commits reversible error by mischaracterizing *community* property as *separate* property has not been directly decided by our supreme court. However, the high court has held that "[o]nce reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division." *Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985). Only the trial court may make a just and right division of community property. TEX.FAM.CODE ANN. § 3.63 (Vernon 1993). The appellate court's role is to determine only if the trial court abused its discretion in making the division. *See Jacobs,* 687 S.W.2d at 732–33; *McKnight v. McKnight,* 543 S.W.2d 863, 866–68 (Tex. 1976). If the trial court mischaracterizes community property as separate property, then the property does not get divided as part of the community estate. If the mischaracterized property has value that would have affected the trial court's just and right division, then the mischaracterization is harmful and requires the appellate court to remand the entire community estate to the trial court for a just and right division of the properly characterized community property. If, on the other hand, the mischaracterized property had only a *de minimis* effect on the trial court's just and right division, then the trial court's error is not an abuse of discretion.[5]

We recognize that some appellate decisions have held that a trial court's error in mischaracterizing community property as separate property does not require reversal unless the appellate court finds that the trial court would have made a different division if the property had been properly characterized. *See King v. King,* 661 S.W.2d 252, 254 (Tex.App.—Houston [1st Dist.] 1983, no writ); *see also Bradley v. Bradley,* 725 S.W.2d 503, 505 (Tex.App.—Corpus Christi 1987, no writ); *Cook v. Cook,* 679 S.W.2d 581, 585 (Tex.App.—San Antonio 1984, no writ); *McLemore v. McLemore,* 641 S.W.2d 395, 398 (Tex.App.—Tyler 1982, no writ); *Smith v. Smith,* 620 S.W.2d 619, 623 (Tex.Civ. App.—Dallas 1981, no writ). In general, the cases hold that reversal is required only if the appellant shows that, due to the trial court's legal error, the resulting division constituted an abuse of discretion. *King,* 661 S.W.2d at 254; *Bradley,* 725 S.W.2d at 505. Although this Court has not revisited this rule since *Jacobs,* other courts have contin-

---

**4.** The Family Code authorizes a trial court to make a "just and right" division of the parties' estate, having due regard for the rights of the parties. TEX.FAM.CODE ANN. § 3.63 (Vernon 1993).

**5.** The doctrine of *de minimis non curat lex* controls the disposition when a mischaracterization creates no significant effect on the trial court's property division. Under this doctrine, the "law does not care for, or take notice of, very small or trifling matters." BLACK'S LAW DICTIONARY 431 (6th ed. 1990); *see, e.g., Phillips v. Parrish,* 814 S.W.2d 501, 506 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

ued to apply the rule without analyzing it in light of *Jacobs*. *See Iglinsky v. Iglinsky*, 735 S.W.2d 536, 539 (Tex.App.—Tyler 1987, no writ); *Bradley*, 725 S.W.2d at 505. We disagree with these courts.

The facts of this case illustrate why this Court cannot presume that the trial court would have made the same division despite the mischaracterization. At rendition, the trial court judge stated that he had made an approximately 61%/39% division [6] in Mary's favor. Because the division did not consider the approximately $45,000 in mischaracterized property, the court actually made an approximately 64%/36% division in Mary's favor.[7] We do not suggest that, under the facts of this case, the trial court judge did not have the power to make a more or less disproportionate division. However, under *Jacobs* and *McKnight*, only the trial court has the power to make a just and right division of the community estate. *Jacobs*, 687 S.W.2d at 733; *McKnight*, 543 S.W.2d at 865 (stating "a court of civil appeals has no authority to render its own property division"). To hold that this Court may not remand the case unless we determine that the distribution actually made by the trial court, considering the mischaracterization, is not an abuse of discretion effectively permits this Court to award a completely new division of the community estate—a 64%/36% division, rather than a 61%/39% division. Yet, this Court does not have the power to

render a new division. Therefore, in light of *Jacobs*, we rule that when a mischaracterization has more than a mere *de minimis* effect upon the trial court's division, the appellate court must remand the community estate to the trial court for a just and right division based upon the correct characterization of the property.

In this case the trial court's error affected the court's property division. Hence, we reverse and remand the cause for a just and right division of the community estate. In addition, because the value of the America United Life annuity has not yet been determined, the trial court must assess the value, if any, of the annuity before disposing of the property.

We sustain appellant's second point of error.

Finally, Mary raises a cross-point asserting that she should be awarded damages because Edward took this appeal without sufficient cause and for delay pursuant to TEX.R.APP.P. 84. We find his appeal was not frivolous; therefore, Mary's request for damages under appellate rule 84 is denied.

We overrule appellee's cross-point.

We affirm the portion of the trial court's judgment that denies appellant's motion to recuse. In addition, we affirm the portion of the trial court's judgment that pertains to the divorce. We reverse the portion of the

---

**6.** Mary has argued that we should ignore this statement because it was a mere finding of fact recited in the judgment which conflicts with findings of fact which were later filed by the trial court. Under rule 299a, if findings of fact are recited in a judgment and are in conflict with the findings of fact made pursuant to rules 297 and 298, the latter findings are controlling for appellate purposes. TEX.R.CIV.P. 299a. However, the allegedly conflicting findings Mary cites are conclusions of law, properly filed under the heading "CONCLUSIONS OF LAW." Rule 299a simply does not apply.

**7.** The trial court found the community estate to be valued at $534,300. We assume the court meant $534,700 because the court awarded Edward assets amounting to $209,900, and awarded Mary assets amounting to $324,800 ($209,900 + $324,800 = $534,700). Therefore, the trial court found that it awarded 39.2% of the community estate to Edward and 60.8% to Mary. The trial court did not assess a value for the annuity because Edward did not offer a value at

trial. Edward has asked this Court to take judicial notice of his calculated value of the annuity. We decline to do so. However, assuming without deciding the annuity was valued at $21,602.20, as he suggests, the total value of the mischaracterized properties amounts to $45,413.80 ($7,553.43 + $4489.73 + $2796.96 + $8971.37 + $21602.20 = $45,413.80). Adding the value of the mischaracterized assets to the total value of the community estate found by the trial court, the correct value of the community estate is $580,113.80 ($534,700 + 45,413.80 = $580,113.80).

Therefore, Mary received community property valued at $370,213.80 ($324,800 + $45,413.80 = $370,213.80). Edward received community property valued at $209,900. Thus, the court awarded approximately 64% of the community estate to Mary ($370,213.80 / $580,113.80 = .64). The court awarded Edward 36% of the community assets ($209,900/$580,113.80 = .36).

judgment pertaining to the property division and remand that part of the judgment to the trial court with instructions that the trial court make a just and right division consistent with this opinion.