**Opinion issued September 16, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-20-00753-CV

_____

**SAMUEL RIOJAS, Appellant**

**V.**

**DALIA RIOJAS, Appellee**

---

**On Appeal from the 310th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-33496**

---

### MEMORANDUM OPINION

This appeal concerns the division of pension assets between divorcing spouses. Samuel Riojas petitioned for divorce from Dalia Riojas. The trial court granted the divorce based on insupportability, divided the community property, and

awarded each party 100% of their respective pensions. On appeal, Samuel[1] argues that the trial court abused its discretion by awarding Dalia a disproportionate share of the marital estate.

We affirm.

## Background

Samuel and Dalia married in May 1986. Samuel filed for divorce in May 2019 based on insupportability, and requested a just and right division of the community property if the parties did not agree on the division of their marital estate. In December 2019, Dalia counter-petitioned for divorce on adultery grounds and sought a disproportionate share of the marital estate. Dalia amended her petition in June 2020, adding insupportability as a ground for the divorce. In her amended petition, she sought a disproportionate division of the community estate based on fault in the breakup of the marriage, education and future employability of the spouses, community debt and liabilities, ages of the spouses, and the earning power of the spouses.

At trial, Samuel testified that he was 57 and Dalia was 56 years old. They had two adult children. Samuel was an engineer and worked for Boeing on the International Space Station. He had about 35 years' experience in the space industry.

---

[1] We refer to the appellant and appellee by their first names because they share the same last name.

2

During their marriage, Samuel accumulated multiple 401(k) accounts because he worked for multiple companies, including Lockheed Martin. Dalia was also an engineer. She worked for NASA. Samuel testified that he and Dalia earned roughly the same annual income, between $110,000 and $120,000, and that both parties were in good health. Throughout their careers, both Dalia and Samuel accumulated substantial retirement benefits.

Samuel testified about his Lockheed Martin pension account. He stated that if he retired on July 1, 2020, then Lockheed Martin would pay him a monthly pension payment of $257.22 for the rest of his life. In support of this monthly pension benefit, he presented a Lockheed Martin retirement statement showing the estimated values of his monthly pension payment. He testified that if Dalia retired with NASA on July 2, 2020, then her FERS[2] pension would entitle her to receive $3,677 per month. He presented a copy of Dalia's FERS statement showing the estimated annuity values. He testified that he was seeking an equal division of the parties' pensions because it would not be fair if the trial court awarded 100% of Dalia's FERS pension to her and 100% of his Lockheed Martin pension to him since her pension was "15 times" greater than his.

---

[2]     Federal Employee Retirement System.

In Samuel's inventory statement, he disclosed that he had an Allianz Annuity IRA. About seven months before filing for divorce, Samuel rolled all his 401(k) accounts from his former employers into the IRA. Dalia was aware of his rollover transactions. The purpose of the rollover, according to Samuel, was to consolidate all of his 401(k) accounts. The IRA was Samuel's major retirement asset with a cash surrender value of $1,126,267.53—the estimated value at the time of the trial—and a protected income value of $1,520,441.37—the estimated value at the end of the 10-year maturity period.[3]

Samuel asked the court to award the entire IRA asset to him and to consider the cash surrender value in the property division. He testified that he was not claiming his IRA as his separate property but as community property. He testified that the parties separated in April 2019, because Dalia accused him of having affairs with other women. He denied committing adultery.

Dalia testified that she wanted the court to award 100% of her FERS pension to her and 100% of Samuel's Lockheed Martin pension to him. She believed that would be fair if the court awarded the FERS pension to her and the Lockheed Martin pension to Samuel because they each had the ability to accumulate similar retirement

---

[3] The invoice showed that the cash surrender value was the "net cashout [sic] value after penalties and market value adjustments." The invoice also showed that protected income value included "all bonuses" and could only be accessed "over time as an income, long-term care payments, and death benefit over 5 years or more."

4

benefits but Samuel chose a different route in both his employment and retirement benefits.

Dalia introduced a copy of her inventory statement. Under real estate, Dalia listed a property on Scenic Elm valued at $450,000 and requested that the court award that property to Samuel. She also listed his Allianz Annuity IRA, valued it at $1,520,441.37, and requested that the court award 100% of the IRA to Samuel. She also requested about $500,000 in cash from Samuel to equalize the property division since the difference between the cash surrender value and the protected income value of Samuel's IRA was about $400,000 and the house was valued at $450,000. She ultimately requested an equal division of the community property and testified that if the court used Samuel's $1.1 million value of the IRA instead of her $1.5 million value, then the court should award her all of her FERS pension, even if that made the property division unequal. She testified that she was surprised that Samuel wanted a divorce and that she would not have consented to the withdrawal from his 401(k) accounts to purchase the IRA if she knew he wanted to end their 36-year marriage.

Dalia testified in great detail about her suspicions of Samuel's affairs. Certain communications Samuel had with his friends coupled with his secretive behavior with his phone led Dalia to believe that he was having an affair. She also believed

that Samuel committed adultery based on her "woman's intuition." She counted his Viagra pills and compared them to the times they had sex, which did not match.

The trial court granted the divorce on insupportability grounds, signed the Final Decree of Divorce, and issued findings of fact and conclusions of law at Samuel's request. Among its findings, the trial court found that Samuel's IRA was valued at $1.1 million and awarded it to him. The court also awarded 100% of Samuel's Lockheed Martin pension to him and 100% of Dalia's FERS pension to her. The court divided the rest of their marital estate almost equally. The trial court awarded 49.2% of the marital estate to Dalia and 50.8% to Samuel.[4] The court determined that the division of the parties' community property was just and right.

Samuel moved to reconsider or for new trial, alleging that the court incorrectly divided the marital estate when it intended it to be an even division. Dalia responded, arguing that Samuel's conclusory allegation about the trial court's intent was unfounded because the court did not specify its intent. The trial court denied Samuel's motion.

Samuel appealed.

---

[4]    Although there is a negligible difference for the mathematical calculation, the parties do not dispute the court's nearly equal division of property other than their respective pensions.

**Disproportionate Division of Community Property**

Samuel only challenges the trial court's division of the parties' retirement accounts—Dalia's FERS pension and Samuel's Lockheed Martin pension. He does not argue that the trial court mischaracterized the parties' pension accounts. Rather, he argues that the trial court abused its discretion by awarding Dalia 100% of her FERS pension because there is no evidence or insufficient evidence supporting a disproportionate division because both parties testified that an equal division of the estate would be fair, the spreadsheet shows an equal division of all other community assets, and Dalia's pension was more valuable than Samuel's. Samuel also argues that the trial court intended to divide the property evenly, as supported by the division of the community property excluding the pensions, which led to a 49.2%/50.8% split in Samuel's favor. He complains that the division of the entire community estate, including the pensions, is "disproportionately skewed" in favor of Dalia because it causes a 62%/38% split in Dalia's favor.

**A.     Standard of review**

We review a trial court's division of marital property for an abuse of discretion. *See Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018); *Cohen v. Bar*, 569 S.W.3d 764, 773 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or with no reference to guiding rules and principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011);

*Fuentes v. Zaragoza*, 555 S.W.3d 141, 162 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The trial court has broad discretion when dividing the marital estate at divorce, and we must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). "The division 'should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair.'" *Bradshaw*, 555 S.W.3d at 543 (quoting *Hedtke v. Hedtke*, 248 S.W. 21, 23 (1923)).

In family law cases, legal and factual insufficiency are not independent grounds for asserting error but are relevant factors in assessing whether a trial court abused its discretion. *See Smith v. Karanja*, 546 S.W.3d 734, 737 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We address whether the trial court abused its discretion in two parts. First, we assess whether the trial court had sufficient information to exercise its discretion. *Cohen*, 569 S.W.3d at 773. We then assess whether the trial court erred in its exercise of discretion. *Id*. For legal sufficiency, we review all the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). For factual sufficiency, we consider all the evidence for and against the challenged finding and set the finding aside "only if the evidence is so weak or

if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

We conduct the applicable sufficiency review when considering the first prong of the test. *See Syed v. Masihuddin*, 521 S.W.3d 840, 847 (Tex. App.— Houston [1st Dist.] 2017, no pet.). We then determine whether, based on the evidence, the trial court made a reasonable decision. *See id.* at 848. We must remand the cause for a new division of the community estate if we find reversible error that materially affects the trial court's property division. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985); *Lynch v. Lynch*, 540 S.W.3d 107, 132 (Tex. App.— Houston [1st Dist.] 2017, pet. denied). We defer to the trial court's factual resolutions and any credibility determinations that may have affected those resolutions, and we may not substitute our judgment for the trial court's judgment. *See Murff*, 615 S.W.2d at 700 ("The trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic.").

**B.    Applicable law**

Section 7.001 of the Texas Family Code requires the trial court to order a "division of the estate of the parties in a manner that the court deems just and right." TEX. FAM. CODE § 7.001. Each spouse has the burden to present sufficient evidence

9

of the value of the community estate to enable the trial court to make a just and right division. *See Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ). The trial court need not divide the community estate equally. *See id.* at 222. It may order an unequal division of the community estate as long as a reasonable basis exists. *See Vannerson v. Vannerson*, 857 S.W.2d 659, 668 (Tex. App.—Houston [1st Dist.] 1993, writ denied). In determining whether to order a disproportionate division of the community estate, the trial court may consider these non-exclusive *Murff* factors:

- the nature of the property;

- disparity of incomes or earning capacities;

- the parties' business opportunities;

- the parties' relative financial condition and obligations;

- the parties' education and physical condition;

- the disparity in ages;

- fault in the break-up of the marriage;

- the benefit the innocent spouse would have received had the marriage continued;

- the size of any separate estates; and

- the probable need for future support.

*Murff*, 615 S.W.2d at 699.

10

## C. Analysis

Citing *McElwee v. McElwee*, 911 S.W.2d 182 (Tex. App.—Houston [1st Dist.] 1995, writ denied), Samuel argues that the trial court abused its discretion because "[p]roperty divisions involving much smaller errors on a percentage basis have been reversed." In *McElwee*, the trial court awarded about 60.8% of the community property to the wife and 39.2% to the husband, excluding five properties which the court characterized as the wife's separate property. 911 S.W.2d at 185. On appeal, the husband alleged that trial court abused its discretion by mischaracterizing the five properties as the wife's separate property. *Id.* at 189. A panel of this court held that the trial court abused its discretion because the record established that the trial court did not consider roughly $45,000 in mischaracterized property, which would have affected the trial court's just and right division and created a different division percentage had the court considered it. *Id.*

Samuel does not contend that the trial court mischaracterized the community estate as Dalia's separate property. Nor does he contend that the trial court omitted these pension accounts from its consideration of its just and right division of the community estate. Instead, his issue on appeal is that the trial court abused its discretion by awarding Dalia 100% of her pension account and Samuel 100% of his pension account. Samuel contends that the trial court "intended" to divide the community estate equally. But the record lacks evidence or any citation to the record

11

to support his contention. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain . . . appropriate citations . . . to the record."). The trial court never expressed the intention to divide the community equally in its findings of fact and conclusions of law. *Cf. Butler v. Butler*, 975 S.W.2d 765, 768 (Tex. App.—Corpus Christi 1998, no pet.) (abuse of discretion found where court intended to divide the community estate 60-40 in wife's favor but overlooked reimbursement of assets in just and right division of the community estate). The court found that Dalia and Samuel had community property during the marriage and attached a spreadsheet listing the property and their values. *See* TEX. FAM. CODE § 3.002 (defining community property as property acquired by either spouse during marriage); *McElwee*, 911 S.W.2d at 188 (as relevant here, "[m]atured private retirement, annuity and pension benefits earned by a spouse during marriage are part of the community estate.").

According to the spreadsheet, the trial court awarded 100% of Samuel's Lockheed Martin pension to him. The trial court adopted Dalia's and Samuel's recommendation of using the cash surrender amount and valued his pension at $1.1 million. The trial court also awarded 100% of Dalia's FERS pension to her. The court determined that the division of the parties' community property was just and right:

> The property of [Samuel] and [Dalia] effected by the final judgment is just and right, having due regard for the rights of each party, irrespective of the characterization of any item of property as either community or separate.

12

In applying the *Murff* factors here, the record reflects that the parties had nearly identical incomes, earning capacities, and ages. Samuel testified that he and Dalia earned roughly the same annual income and that they were healthy. He testified that they were experienced engineers who worked in the space industry for many years.

Both parties testified and presented evidence about their retirement accounts and pensions. Samuel testified that he had accumulated several 401(k) accounts from various employers over time. He also testified that he was entitled to a pension from Lockheed Martin. The evidence shows that Samuel would have received about $3,000 less in monthly pension payments than Dalia. He requested an equal division of the Dalia's FERS pension out of fairness because the value of her pension was far greater than the value of his pension.

Dalia testified that she earned her FERS pension by working at NASA. She also testified that Samuel had the ability, knowledge, and capacity to have earned the same retirement benefits that she earned but he chose different employers and retirement benefits. Thus, she believed that an award of her entire FERS to her would have been fair.

The court heard considerable testimony about Samuel's other retirement benefits. Samuel testified that he consolidated multiple 401(k) accounts he earned from working at several different companies and rolled them into an Allianz Annuity

13

IRA. The evidenced showed that the cash surrender value of the IRA was over $1.1 million. Samuel and Dalia testified that she was aware of his decision to roll the 401(k) accounts into the Allianz Annuity IRA. Dalia testified that she would not have agreed to the rollover had she known that Samuel intended to divorce her several months later.[5]

The court also heard other evidence about the parties' debt obligations. Samuel and Dalia owed little debt in comparison to the value of their community estate. Samuel testified that he cosigned a student loan for their daughter. He owed around $7,500 for it. Dalia did not cosign that loan. Samuel testified that he filed for divorce after Dalia had accused him of having an affair. Dalia testified that she had suspicions of Samuel's alleged affair based on his secretive behavior and missing Viagra pills.

The trial court had sufficient information to exercise its discretion in dividing the marital estate. And given the record before us, we cannot say that the trial court abused its discretion. The trial court has broad discretion to divide the marital estate, and we must presume that it exercised that discretion properly. *Murff*, 615 S.W.2d at 698–99. Although the trial court did not provide specific reasons for its division

---

[55]    In her brief, Dalia explained that she would have not agreed to the rollover because "Samuel put all of his retirement accounts out of reach of a Qualified Domestic Relations Order ("QDRO") division by putting the annuity entirely in his name." However, there was no evidence to support her conclusion.

14

of the community property estate, the trial court could have had a reasonable basis to award Dalia 100% of her FERS pension. Dalia proposed that Samuel keep his IRA. She testified that she would not have consented to his rollover had she known he was contemplating divorce. As the trier of fact, it was the trial court's role to judge the credibility of the witnesses, weigh the testimony, accept or reject any testimony, and resolve conflicts in the evidence. *Wilson*, 168 S.W.3d at 819; *Murff*, 615 S.W.2d at 700. The trial court could have relied heavily on Dalia's testimony and decided to award Samuel all of his retirement and Dalia all of hers, despite their values. The trial court could have credited Samuel's testimony about the parties' incomes, earning capacities, and ages. A trial court may order a disproportionate division of the community property as long as the evidence shows a reasonable basis for doing so, and equal division of the property is not mandatory as long as the division is equitable. *See Finch*, 825 S.W.2d at 221; *Vannerson*, 857 S.W.2d at 668.

Thus, Samuel has not carried his burden of showing from the evidence that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980); *Rafferty v. Finstad*, 903 S.W.2d 374, 377 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("It is not an abuse of discretion for a trial court to make an equal division of the property, even where the equities balance in favor of the wife."). Because the evidence supports the trial court's award, we hold that the trial

court properly exercised its discretion in dividing the community estate. *See, e.g.*, *Lynch*, 540 S.W.3d at 130 (evidence supported court's disproportionate division of marital estate in favor of wife); *Taylor v. Taylor*, No. 14–09–00012–CV, 2010 WL 2542549, *4 (Tex. App.—Houston [14th Dist.] June 24, 2010, no pet.) (mem. op.) (no abuse of discretion when trial court awarded over 100% of community estate to wife).

We overrule Samuel's sole issue.

## Conclusion

We affirm.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.