Rose Marie HULS, Appellant,

v.

Herbert Roland HULS, Appellee.

No. 17880.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 2, 1981.

Brochstein & Slobin, Robert Markowitz, Houston, for appellant.

Patricia A. Wicoff, Houston, for appellee.

Before COLEMAN, C. J., and SMITH and PEDEN, JJ.

PEDEN, Justice.

Rose Marie Huls appeals only from those portions of a "no fault" divorce decree that divide the property of the parties and fix the amount Mr. Huls is to pay for child support.

After a non-jury trial, the judge made findings of fact. His ninth finding included a statement that the parties had accumulated the following property during the marriage:

a) A family business, Fruit Gifts of Houston, Inc., found to have a value of $85,000.

b) A homestead valued at $118,000.

c) Furniture and furnishings valued at $8,509.20.

d) A 1975 Stationwagon valued at $750.

e) Cash on hand of $1,049.37.

f) Cash surrender value on a life insurance policy, $927.45.

g) A 1977 Dodge Van valued at $17,000.

h) Stocks and bonds.

A condensed form of other pertinent findings was:

10) Separate property of Mrs. Huls consisted of:

a) Jewelry in the approximate sum of $20,000.

b) Household items in the amount of $6,214.

11) Community debts were listed.

12) Mrs. Huls is permanently confined to a wheel chair as a result of an automobile accident on November 19, 1970.

13) As a result of the accident, the parties filed suit in Harris County, wherein Mrs. Huls sought damages for loss of wage earning capacity, pain and suffering, and bodily injury.

14) The case was settled and the funds received were used primarily to purchase stocks and bonds for which a single account was established at Fannin Bank.

15) When dividends were paid or interest was earned on the stock and bond holdings, said funds were deposited into a single account at Fannin Bank and were later remitted to the parties. The same account was used to fund the purchase of stocks and bonds and was used as the receptacle for the proceeds from the sale of stocks and bonds.

16) The value of the stocks and bonds at the time of trial was $386,152.48.

17) Both parties' sworn inventories were introduced into evidence.

18) In the year 1978, Mrs. Huls received $10,182 as compensation from the family corporation; Mr. Huls received compensation in the amount of $12,550.

19) The stocks and bonds yielded over $22,000 in dividends and interest in 1979.

The trial judge made these conclusions of law:

4) The stocks and bonds are both separate funds of Mrs. Huls and community funds of the parties.

5) The settlement of the personal injury claim was for compensation for loss of earnings and earning capacity, pain and suffering, loss of family vehicle, payment of medical expenses, both past, present and future.

6) The Court, by and through the exhibits introduced, could ascertain an amount representative of the community's share of the stocks and bonds considering the elements of damages originally sought and the length of the marriage.

7) The allegation by Mrs. Huls that the community interest in the stocks and bonds was a gift to her by the Petitioner was not substantiated or proved.

No request was made for additional findings or conclusions.

■ In her first four points of error the appellant says that the court erred in failing to find that the modified van was her separate property and in concluding that some portion of the stocks and bonds portfolio was community property. She was awarded these assets, but she asserts that she would have been awarded a larger percentage of the "true" community assets (specifically, the family business) if her separate assets had not been considered to be community property. She contends that the court abused its discretion because the findings of fact and conclusions of law set out above are so against the great weight of the evidence as to be unjust. In reviewing factual insufficiency points we consider

all of the evidence in the record as a whole. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The trial judge divided the assets of the parties by awarding to Mrs. Huls the stocks and bonds, the family residence and household furniture, and the 1977 Dodge van. She was ordered to pay the debts on the home, to pay Mr. Huls $6,000 and to pay her attorneys. The net value of her share was $482,885.

Mr. Huls was awarded the family business, a 1975 station wagon, the $6,000 to be paid by Mrs. Huls, plus some personal effects and cash. He is to pay his attorney.

His share had a net value of $85,977, which amounts to only about 15% of the value of the property divided. It should be noted, however, that this percentage is based on a characterization of all of the stocks and bonds as community property, while they were found to be partly the separate property of Mrs. Huls.

The parties were married on October 15, 1964, and their only child, Laura, was born in 1967. The accident involving Mrs. Huls left her able to move only her arms and her right hand. She testified that her mother, Mrs. Pauline Wisefeld, bought and gave her the 1977 Dodge van which was subsequently modified to be driven by a handicapped person. She identified two checks written by her mother, then said that the $800 check represented the down payment on the van and that the balance of $7400 was paid with a second check; written on the second check is the phrase "For Rose Marie," but the two checks were offered in evidence for the limited purpose of showing the base price of the vehicle, and Mrs. Wisefeld was not called to testify. Both parties listed the van as community property on their original inventories. Mrs. Huls testified that her listing was "just an error" and probably was done mistakenly. Mr. Huls testified that his determination that the van was a community asset was based on the inventory filed by Mrs. Huls. He said he was aware that she has subsequently changed her inventory to reflect it as separate property, and he stated that she and her mother were the ones involved in the transactions that surrounded the purchase of that van. He picked the modified van up from Hutchinson, Kansas, and drove it back to Houston. All of the testimony concerning the van was from interested parties.

■ Section 5.02 of the Texas Family Code provides: "Property possessed by either spouse during or on dissolution of the marriage is presumed to be community property." The spouse asserting otherwise must prove the contrary by satisfactory evidence. *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965); *Wilson v. Wilson*, 145 Tex. 607, 201 S.W.2d 226 (1965). Section 3.63 of the Family Code charges the court with ordering "a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." The appellate court has a duty to indulge every reasonable presumption in favor of a proper exercise of the trial court's discretion in dividing the estate of the parties. *Cooper v. Cooper*, 513 S.W.2d 229, 233 (Tex.Civ.App.1974, no writ). The trial judge, who observed the parties through four days of testimony, was entitled to conclude that the van was not a gift to her alone. We cannot say that the court's finding that the van belonged to both of the parties was so against the great weight of the evidence as to be manifestly unjust.

■ The check for $523,464.69 received in settlement of the parties' suit arising from Mrs. Huls' automobile accident was payable to both of them. Their petition asked for $440,000 for physical pain and mental anguish, $220,000 for loss of Mrs. Huls' services as a housewife, $61,751.64 for medical, hospital, and physical management and maintenance services during the first year following the accident, $1,400,000 for future hospital and medical expenses, $320,900 for loss of earning capacity, and $2,000 for property damage.

Recovery for personal injuries, pain, and suffering sustained by one spouse during the marriage is separate property, while recovery for loss of earnings and past and

future medical expenses is community property. Tex.Family Code Ann. § 5.01(a)(3); *Graham v. Franco*, 488 S.W.2d 390 (Tex. 1972).

No allocation of the settlement proceeds to any specific item of damages was offered in evidence in our case, but Mrs. Huls apparently assumed that the settlement was based on the same proportional amounts as prayed for in their damage suit. We note in passing that almost 70% of the damages sought would be classified as community, but it is mere speculation to assume that the settlement was made on that basis.

The trial court's findings and conclusions indicate that after the settlement funds were invested in the stocks and bonds, the proceeds from periodic sales of such securities were mingled with the income produced by dividends and interest; of course such income is community property. We think it clear that the trial judge was correct in concluding that only part of the stocks and bonds is the separate property of Mrs. Huls.

■ The appellant also contends that the evidence established as a matter of law that her husband gave her his community interest in the stocks and bonds. In support of that position she relies on: 1) his knowledge of the agreement she signed with Fannin bank establishing the "Rose Marie Huls, Separate Property Custody Account," 2) balance sheets and financial statements made in connection with borrowing from Fannin Bank for Fruit Gifts, Inc., since the financial statements show the stocks and bonds to be standing in the name of "Rose Marie Huls, Separate Property Account— Fannin Bank Trust Dept.," 3) income tax returns signed by Mr. Huls designating the source of dividend income either as "Fannin Bank-Custodian" or "Fannin Bank, Custodian for Rose M. Huls", 4) the fact that Fannin Bank posted proceeds from the sale of securities to a principal ledger and separately posted income from interest and dividends to an income cash ledger, both maintained for the one trust account, 5) the investment management account established by both Mr. and Mrs. Huls in the name of Mrs. Rose Marie Huls, and 6) testimony of the appellant's brother that the husband told him several times that the settlement money belonged to Rose.

Mrs. Huls contends that the case of *Long v. Knox*, 291 S.W.2d 292 (Tex.1956), requires us to find that these actions by the husband established his intent to make a gift of the securities as a matter of law, We disagree. In an attempt to avoid creditors, the husband in *Long* executed an affidavit stating that certain property was his wife's separate property, and he signed real estate conveyances with similar recitations. In our case the only pertinent sworn documents are the inventories of both husband and wife in which the securities are listed as community property. The agreement establishing the trust account makes no mention of how it is to be styled and is not even signed by Mr. Huls. One of the balance sheets referring to the trust account as "Rose Marie Huls Separate Property Account" is signed by Mr. Huls, and one is not. As to the income tax returns, we find nothing which could be held to establish as a matter of law that Mr. Huls had given his interest in the securities to Mrs. Huls. In *Long v. Knox, supra*, at 297, it was stated: "the filing of a return as provided by law has no bearing on the intention of the parties as to the character of the properties, whether separate or community."

The investment management account was signed by Mr. Huls, but it recited only that it was to be established *in the name of* Rose M. Huls. This falls short of recitals which, in the context of deeds and credit transactions, have been held to have a significant bearing on whether the husband could challenge the wife's separate ownership. *See, e. g., Ray v. United States*, 385 F.Supp. 372 (D.C., S.D.Tex.1974); *Brick & Tile, Inc. v. Parker*, 143 Tex. 383, 186 S.W.2d 66 (1945); *McKivett v. McKivett*, 123 Tex. 298, 70 S.W.2d 694 (1934). Concerning the bank's maintenance of two separate ledgers for the trust account, the appellant suggests that such activity was aimed toward and was successful in avoiding commingling, and thus that the funds were kept separate. If it had been established that all of the

funds in the trust account were the separate property of Mrs. Huls, that the bank's records reflected all transactions in and out of the account, and that the separate posting procedure was followed on all occasions, maintenance of the separate ledgers might have been sufficient to trace Mrs. Huls' separate funds into the securities owned at the time of trial. None of these assumptions is supported by the evidence in this case, however. We have already held that the trial court properly concluded that the original settlement represented both separate and community recovery, and there is some conflict in the testimony as to whether funds other than the settlement check were also deposited in the account. Mrs. Louise Cavin, the bank officer, testified that there is a gap of approximately one month in the trust account records and that during ten days of that month the balance in the account fluctuated quite a bit. Moreover, there was no testimony that the separate posting procedure was followed on all occasions. Neither the testimony nor the briefs offers any suggestion as to why or on whose instructions the trust account was maintained by the bank in this fashion. Maintenance of the separate ledgers, without more, fails to establish an intent by Mr. Huls to make a gift of his community share of the funds to the separate estate of Mrs. Huls as a matter of law; if anything, the opposite inference may be drawn. As to the testimony of the appellant's brother, the court had an opportunity to observe him and was not required to accept his testimony concerning Mr. Huls' statements. Even if the trial judge believed that Mr. Huls had at times said that the securities were the separate property of Mrs. Huls, the judge was entitled to decide that such statements amounted only to an erroneous legal conclusion.

■ In the appellant's fourth point of error she complains about the trial court's division of the community properties and liabilities. She says that since she is a quadriplegic with future medical needs and living expenses estimated between $47,000 and $51,000 per year (some of which will be occasioned by the loss of her husband's assistance), the trial court abused its discretion in failing to award her the family business, in ordering her to assume certain community debts which she incurred and to pay Mr. Huls $6000, and in requiring her to pay her own attorney's fee. The serious nature of Mrs. Huls' problem is obvious, but it is also clear that the trial judge considered her special needs when he awarded her almost 85% of the estate. When asked if what she was asking the court to do was make a division so that Mr. Huls left the 16-year marriage with $32,620.99 and she left it with $560,683.82, her answer was "yes."

■ The wife also asserts that Section 5.01 of the Family Code should not apply to her recovery from the automobile accident since the marriage no longer continues. We do not agree. The character of marital property is determined at the time it is acquired. *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471 (1949); *Welder v. Lambert*, 91 Tex. 510, 44 S.W. 281 (1898).

■ Clearly the trial court can order an unequal division of marital property where a reasonable basis exists for doing so. *Goetz v. Goetz*, 567 S.W.2d 892 (Tex.Civ. App.1978, no writ); *Southard v. Southard*, 567 S.W.2d 570 (Tex.Civ.App.1978, no writ); *Muns v. Muns*, 567 S.W.2d 563 (Tex.Civ. App.1978, no writ); *McKibben v. McKibben*, 567 S.W.2d 538 (Tex.Civ.App.1978, no writ); *Jackson v. Jackson*, 552 S.W.2d 630 (Tex. Civ.App.1977, no writ); *Horlock v. Horlock*, 533 S.W.2d 52 (Tex.Civ.App.1976, writ dism'd).

■ In *Robbins v. Robbins*, 601 S.W.2d 90, 92 (Tex.Civ.App.1980, no writ), the wife complained of receiving approximately 58% of the community property; we said that the trial court "was authorized to award the wife a greater share of the community estate, provided that its award was not so disproportionate as to be inequitable." Factors to be considered include the disparity of earning power of the parties, their business opportunities, capacities and abilities, their physical condition, educational background, and probable future need for

support. *Cooper v. Cooper, supra* at 233. Both Mr. and Mrs. Huls have college degrees; he is physically able, and she is not; she could reinvest her securities at 14.5% interest and generate approximately $47,850 per year in income; he worked in several advertising jobs before beginning the family business and has no such capital; she has an expectation of inheritance, and he does not. The trial judge heard and evaluated testimony concerning these and other factors; it appears that he took into consideration all of the circumstances of the parties in dividing their property, and it must be presumed that he did so, absent a showing to the contrary. *Musselwhite v. Musselwhite*, 555 S.W.2d 894 (Tex.Civ.App. 1977, writ dism'd).

Having reviewed the record as a whole, we cannot say that findings of fact 14–16 were so against the great weight of the evidence as to be manifestly unjust or that the trial court committed reversible error in concluding that the stocks and bonds are reflective of both separate and community property. Mrs. Huls was awarded all of the securities, and no request was made for an additional finding of fact specifying what percentage of the stocks and bonds was considered by the trial judge to be community property. The judgment recited that the distribution ordered was deemed by the Court to be just and right, having due regard for the rights of each party, and specifically for the physical condition of the Respondent. We hold that no abuse of discretion has been shown, and we overrule points of error 1–4.

In her final two points of error the appellant contends that the court abused its discretion in failing to award more than $400 per month as child support for the parties' daughter, Laura.

 An appellate court should not change the amount of support awarded merely because it might have set it a little higher or a little lower than the trial court did, and every reasonable presumption consistent with the record must be indulged in favor of the judgment. *Brito v. Brito*, 346 S.W.2d 133 (Tex.Civ.App.1961, writ ref'd n. r. e.).

The testimony and exhibits indicate that Laura's private school tuition and lunches amount to $230 per month. An additional $92 per month is spent on Laura's piano lessons and on entertainment for her and Mrs. Huls; the total of these expenses is $322. In addition, at the time of trial Mrs. Huls testified that she had been taking Laura to a psychologist every week or so for about three months, at a cost of $75 per session. No one else testified as to Laura's need for the help of a psychologist. Mrs. Huls said she felt that Laura needed to go because she was upset by the divorce. If we assume that Laura will need to continue these visits to the psychologist every other week (and there is no expert testimony to this effect), the additional cost will be $150 per month. Together with the costs already discussed, this brings the total of her financial requirements to $472 per month. We note that these figures make no allowance for Laura's food or clothing (except school lunches), but Mrs. Huls appears to be able to contribute to her daughter's support.

We hold that the trial court did not abuse its discretion in requiring Mr. Huls to pay $400 per month toward Laura's support.

Affirmed.