Opinion issued March 25, 2010









   





     




In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00091-CV




DANIEL LEE HAINING, Appellant

V.

THU-DUNG THI HAINING, Appellee




On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2006-13649




MEMORANDUM OPINION



          Appellant, Daniel Lee Haining, appeals from a decree of divorce dissolving the
marriage between himself and appellee, Thu-Dung Thi Haining. 
          In four issues, Daniel contends that (1) “[t]he trial court improperly divested
[him] of his separate property interest in the Savings Plan and IRA”; (2) “[t]he trial
court abused its discretion by awarding a $100,000 penalty against [him] for wasting
of community assets and fraud on the community estate”; (3) “[t]he evidence is
legally and factually insufficient to support $70,189 in reimbursement to [the]
community for waste”; and (4) “[t]he trial court clearly abused its discretion in
effectively dividing the community estate 104% to -4% in Thu’s favor.”
          We affirm.
Summary of Facts and Procedural History
          Daniel and Thu married on February 1, 1995. They have no children. Daniel
has a bachelor’s degree in electrical engineering and has worked for ExxonMobil
since 1989. Thu has a bachelor’s degree in accounting and works as an independent
computer consultant. In 1998, they purchased a home in Pearland. 
          In 2001, the couple began to experience marital discord. It is undisputed that,
in 2003, Daniel began a relationship with Dr. Zhili Fu. Daniel maintains, however,
that his relationship with Zhili was, at all times during his marriage, merely a
friendship, and he denies that it was ever adulterous. 
 
          Daniel testified that, in October 2003, while at a training class in Florida, he
met Zhili through a mutual friend. He and Zhili spent time together touring the city
and exchanged telephone numbers. Over the two months that followed, Daniel and
Zhili conversed regularly. 
          In December 2003, Daniel arranged for Zhili to visit him at his Pearland home. 
To introduce the idea to Thu, Daniel asked Zhili to send him an email, purporting to
be their first contact since the training class. In her email to Daniel, Zhili asked if he
remembered her and stated that she would soon be in Houston on business. Daniel
forwarded the email to Thu and suggested that Zhili stay with them. Thu testified
that, during Zhili’s visit, Thu was uncomfortable with the way Daniel and Zhili were
interacting. After Zhili left, Thu asked Daniel not to have any further contact with
her, and Daniel agreed.
          Over the two years that followed, however, Daniel and Zhili traveled to visit
one another and took several trips together. It is undisputed that, in May 2004,
Daniel surreptitiously traveled to Florida to attend Zhili’s graduation from pharmacy
school; in October 2004, Daniel flew to Florida and visited Disney World with Zhili, 
then helped Zhili move to Houston by driving her back with him; in February 2005,
at the end of a Disney trip with Thu, Daniel purportedly had to stay in Florida and
work and Thu flew home alone, however, Zhili flew in the same day to be with
Daniel; and, in September 2005, Daniel and Zhili traveled to Hawaii together. 
          Days after Daniel and Zhili returned from Hawaii, Daniel asked Thu to move
from their four-bedroom home in Pearland to a condominium in downtown Houston.
Ultimately, Daniel and Thu leased a one-bedroom condominium next door, or very
near to, Zhili’s condominium. 
          In December 2005, Daniel gave Thu a Hummer SUV, which he paid cash for
out of their community account. In February 2006, Thu returned from a business trip
to find that Daniel was not at home. When she called him, he would not tell her
where he was, except to say that he was at a friend’s house. He told her that he had
left her Hummer at work, but that he would be home with it the next day. The next
day, Thu saw through the panoramic windows of her condo, her Hummer being
driven out of the garage at the next-door building. Thu did not confront Daniel that
day. Later, rather, Thu went over to the garage and found her Hummer parked next
to a car she determined was Zhili’s.
          On February 28, 2006, Thu filed an original petition for divorce, alleging
insupportability. In addition, Thu sought a disproportionate division of community
property, alleging, inter alia, Daniel’s fault in the break-up, his fraud on the
community, and his wasting of community assets. Thu sought reimbursement and
attorney’s fees. The same day, Thu filed an affidavit alleging, inter alia, that Daniel
had transferred over $275,000 from their joint account at Energy Capital Credit Union
(“ECCU”) to “other accounts” that were beyond her “control or access”; that Daniel
was similarly transferring other community funds “to places and accounts unknown”;
and that Daniel had paid $68,247.58 for a Hummer without her knowledge from
funds from their joint checking account and had forged her name to the title and
purchase documents. The trial court froze Daniel’s assets. 
          Daniel counter-petitioned for divorce, alleging insupportability and cruel
treatment by Thu. Daniel also sought a disproportionate share of the community
estate, alleging in support, inter alia, Thu’s fault in the break-up, fraud, and wasting
of community assets.
          In April 2007, trial to the bench ended in a mistrial. The trial court awarded
$26,712.50 in attorney’s fees to Thu and lifted the freeze so that Daniel could
withdraw the fees out of the community account at ECCU. Subsequently, the trial
court ordered that the Hummer be sold to pay Thu’s additional attorney’s fees and her
living expenses. The Hummer was sold for $50,000.
          In July 2007, the case was re-tried to the bench. Daniel, Thu, and Zhili each
testified in lengthy detail. Thu testified concerning the events and the property at
issue. Thu presented evidence, in the form of an email from Daniel, that Daniel had
admitted to her his infidelity and that he had endeavored to conceal his relationship
with Zhili. Thu testified that, among other things, on February 15, 2006, Daniel had
transferred $20,050 from a joint account into a Wells Fargo checking account in his
name; that he had taken $5,000 cash back; and that, the next day, Zhili had flown to
China using 30,000 frequent flyer miles that Daniel had acquired through his work
travel during the marriage. With regard to the affidavit Thu had filed alleging that
Daniel had transferred $275,000 out of their joint account, Thu testified at trial that
she knew that the amounts withdrawn had gone to pay off the mortgage on the
Pearland house and to buy the Hummer that Daniel had given her. 
          At trial, Daniel and Zhili admitted that they had engaged in a relationship with
one another, that they had taken the alleged trips to Florida and Hawaii together, and
that they had actively concealed these facts from Thu. They each asserted, however,
that their relationship was properly characterized as a friendship and that, on each of
their trips, they had stayed in the same room, but in separate beds, and they had never
expended community funds for their travel expenses, beyond incidental meals. They
each testified that Zhili had paid their travel expenses. Daniel testified that he had
been dishonest with Thu, that he had concealed things from her, and that she deserved
a disproportionate share of the community estate because of his conduct. 
          Daniel and Thu each submitted to the trial court an inventory and appraisement,
and a proposed property division, which were admitted by agreement.
          In its September 4, 2007 “Rendition on Trial and Property Division,” the trial
court granted Daniel and Thu’s petition for divorce “on the grounds of Adultery,
Wasting of Community Assets, Fraud on Community Estate, Fault in Breakup of
Marriage, Reimbursement, and Attorney’s Fees already awarded.” The trial court
accepted as its division of the estate Thu’s exhibit 5a, inventory and appraisement and
proposed division of property, with some exceptions. Namely, the trial court ruled
that Daniel was to retain $260,000 of the $830,000 in his ExxonMobil Savings Plan,
and that Thu would take $570,000. The trial court also awarded, 
[f]or wasting of community assets and fraud on community estate:
$100,000 to [Thu] from [Daniel’s] estate. Said award shall be out of
Exxon Mobil Savings Plan and 401K Plan. Therefore, [Thu] shall
receive $670,000 of 401K plan as listed on [Thu’s Inventory &
Appraisement], Ex 5a and respondent’s share shall be reduced to
$160,000[.]
 
          In its November 2007 final decree, the trial court divided the marital estate
disproportionately, awarding to Thu, among other things, the Pearland house, various
household contents, a Corvette pace car, 15,000 frequent flyer miles, and a total of
$670,000 from Daniel’s ExxonMobil Savings Plan. In addition, the trial court stated
in the decree as follows:
W–7. The Court FINDS that [Daniel] has committed fraud on the
community estate and wasted community assets, and IT IS
THEREFORE ORDERED that [Thu] is awarded a judgment against
[Daniel’s] separate property awarded herein, to be taken as her sole and
separate property, a sum total of $70,189.00, together with interest as the
maximum rate permitted by law from the date the Court signs this Order,
for which let execution issue. 
 
The trial court also “confirmed as the separate property of” Thu “$50,000, payable 
by [Daniel] to [Thu] at her last known address on day of divorce.” 
          Daniel was awarded the couple’s timeshare in Hawaii, various household
contents, a 1998 Lexus, a Sea-doo watercraft, sums in various accounts, $160,000 of
his Exxon/Mobil Savings Plan, and certain debts. 
          At a hearing on Daniel’s objections to the entry of judgment on the decree, the
trial court explained, 
Well, what I did was I gave them each a fairly equal and I don’t
remember if it was exactly equal on his plan [sic] and as the division of
the estate. And then I came back as a penalty and awarded her a
hundred thousand of the estate and the rendition of the division of the
estate, it was fairly equal. Then I came back as a penalty and awarded
her a hundred thousand. [sic]
 
Daniel asked again, “So that was a penalty?” And, the trial court responded, “Right.”
          The trial court did not file requested findings of fact and conclusions of law,
and it denied Daniel’s motion for new trial.
Findings of Fact and Conclusions of Law
          As a preliminary matter, Daniel contends that the trial court’s judgment should
be reversed because it failed to file findings of fact and conclusions of law, as he
requested.
          Texas Rule of Civil Procedure 297 provides, in pertinent part, as follows:
The court shall file findings of fact and conclusions of law within twenty
days after a timely request is filed. . . . If the court fails to file timely
findings of fact and conclusions of law, the party making the request
shall, within thirty days after filing the original request, file with the
clerk and serve on all parties in accordance with Rule 21a a “Notice of
Past Due Findings of Fact and Conclusions of Law” which shall be
immediately called to the attention of the court by the clerk. . . . 
  
Tex. R. Civ. P. 297. 
          When findings of fact and conclusions of law have been properly requested,
a trial court’s failure to file findings and conclusions is presumed reversible, unless
the record affirmatively shows that the requesting party was not harmed by their
absence. Alsenz v. Alsenz, 101 S.W.3d 648, 651–52 (Tex. App.—Houston [1st Dist.]
2003, pet. denied) (citing Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996)). If a
party is prevented from presenting his case on appeal, he has been harmed. Id.
          Here, Daniel requested the trial court to make findings of fact and conclusions
of law; however, the record does not reflect that he filed the requisite notice of past
due findings. Failure to file the reminder required by Rule 297 waives any issue
concerning the trial court’s failure to file findings of fact and conclusions of law. See
Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 410 (Tex. App.—Houston
[1st Dist.] 2005, pet. denied).
          Thu contends that the trial court’s failure to file findings and conclusions is
fatal to many of Daniel’s contentions on appeal. In Alsenz, the appellant contended
that the trial court’s rendition and decree were confusing and that he could not discern
what amounts were allowed for the parties’ reimbursement claims. Alsenz, 101
S.W.3d at 652. We held that, because the attachment to the decree clearly identified 
the nature and source of the couple’s financial assets and debts, the claims for
reimbursement, and the proportion of the division, it was possible for us to follow
each asset, claim, and debt from its inception to its disposition. Id. Hence, the
appellant was not harmed by the absence of findings and conclusions. Id. 
          Here, like Alsenz, the decree, in conjunction with the proposed settlement and
rendition, clearly identifies the nature and source of Daniel’s and Thu’s financial
assets and debts, Thu’s claims for reimbursement, and the proportion of the division. 
Hence, it is possible for us to follow each asset, claim, and debt from its inception to
its disposition.
Standards of Review
          When, as here, a trial court makes no separate findings of fact or conclusions
of law, we must presume that the trial court made all the necessary findings to support
its judgment. Boyd v. Boyd, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no
pet.) (citing Pharo v. Chambers Co., 922 S.W.2d 945, 948 (Tex. 1996)). We draw
every reasonable inference supported by the record in favor of the trial court’s
judgment. Gainous v. Gainous, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.]
2006, pet. denied). The trial court’s judgment must be affirmed it if can be upheld on
any legal theory that finds support in the evidence. In re W.E.R., 669 S.W.2d 716,
717 (Tex. 1984). When the appellate record includes the reporter’s record, the trial
court’s implied fact findings are not conclusive and may be challenged for legal and
factual sufficiency of the evidence supporting them. See Tucker v. Tucker, 908
S.W.2d 530, 532 (Tex. App.—San Antonio 1995, writ denied). 
          Pursuant to the Texas Family Code, “the trial court shall order a division of the
estate of the parties in a manner that the court deems just and right, having due regard
for the rights of each party and any children of the marriage.” Tex. Fam. Code Ann.
§ 7.001 (Vernon 2006); Alsenz, 101 S.W.3d at 654. The trial court has broad
discretion in dividing the marital property and its division will not be disturbed on
appeal unless the complaining party shows that the trial court clearly abused its
discretion. Alsenz, 101 S.W.3d at 654–55 (citing Murff v. Murff, 615 S.W.2d 696,
698 (Tex. 1981)). Under an abuse of discretion standard, legal and factual
insufficiency are not independent reversible grounds, but are relevant factors in
assessing whether the trial court abused its discretion. Mai v. Mai, 853 S.W.2d 615,
618 (Tex. App.—Houston [1st Dist.] 1993, no writ). 
          To determine whether there has been an abuse of discretion because the
evidence is legally or factually insufficient to support the trial court’s decision, we
consider (1) whether the trial court had sufficient evidence upon which to exercise its
discretion and (2) whether it erred in its application of that discretion. In re T.D.C.,
91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied). 
          Under the first prong, we apply the applicable sufficiency review. Id. In a
legal sufficiency review, we consider all of the evidence in the light most favorable
to the verdict and indulge every reasonable inference that would support it. City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). We consider evidence favorable
to the finding if a reasonable factfinder could and disregard evidence contrary to the
finding unless a reasonable factfinder could not disregard it. Id. at 827; Brown v.
Brown, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The
factfinder is the sole judge of the credibility of the witnesses and the weight to give
their testimony. Wilson, 168 S.W.3d at 819. The final test is “whether the evidence
at trial would enable reasonable and fair-minded people to reach the verdict under
review.” Id. at 827. In a legal sufficiency challenge on an issue on which an appellant
bears the burden of proof, he must demonstrate that the evidence conclusively
established all vital facts to support the issue. Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989).
          In a factual sufficiency review, we consider all the evidence for and against the
challenged finding and set it aside only if the evidence is so weak as to make the
finding clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 
1986). “In a bench trial, the trial court is the sole judge of the credibility of the
witnesses, assigns the weight to be given their testimony, may accept or reject all or
any part of their testimony, and resolves any conflicts or inconsistencies in the
testimony.” Rich v. Olah, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.).
“We may not pass upon the credibility of the witnesses or substitute our judgment for
that of the trier of fact, even if a different answer could be reached upon review of the
evidence.” Id. In a factual sufficiency challenge on an issue in which that party had
the burden of proof, the party must demonstrate that the adverse finding is against the
great weight and preponderance of the evidence. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 242 (Tex. 2001). 
          Under the second prong, we consider whether, based on the evidence, the trial
court’s decision was arbitrary, unreasonable, or without reference to guiding rules or
principles. In re T.D.C., 91 S.W.3d at 872. 
          If we find reversible error that materially affects the trial court’s property
division, we must remand the cause for a new division of the community estate.
Jacobs v. Jacobs, 687 S.W.2d 731, 732–33 (Tex. 1985).
Division of Property
          In his fourth issue, Daniel contends that “[t]he trial court clearly abused its
discretion in effectively dividing the community estate 104% to -4% in Thu’s favor.” 
Daniel contends that the division is not supported by legally and factually sufficient
evidence.
          The record shows that Daniel and Thu, by agreement, each submitted an
inventory and proposed property division. However, the proposals are not the same
and do not show an agreement between the parties. See Tex. Fam. Code Ann.
§ 7.006(a) (Vernon 2006). When, as here, the record contains disputed values, we
must presume that the trial court valued the property in the amount most favorable to
its judgment. 
          The record shows that the trial court adopted Thu’s proposed division of the
community property with certain changes. The trial court awarded to Thu the
Pearland house (which Thu valued at $362,500), various household contents, a 
Corvette pace car, frequent flyer miles, and $670,000 of Daniel’s Exxon/Mobil
Savings Plan. In addition, the record shows that the trial court took into account in
its division $70,189 in reimbursement claims, as presented in Thu’s sworn inventory. 
Daniel was awarded various household contents, a 1998 Lexus, the couple’s
timeshare in Hawaii, a Sea-doo watercraft, sums in various accounts, $160,000 of his
Exxon/Mobil Savings Plan, and certain debts. 
          Using the property values that most favor the trial court’s judgment, as we
must, the evidence does not reflect, as Daniel contends, that the trial court awarded
Thu “more than 100% of the community estate.” Rather, the evidence reflects that
Daniel received community property with a net value of approximately $446,195, or
about 27 percent of the community estate. Thu received community property with a
net value of approximately $1.2 million, or about 73 percent of the community estate. 
          Daniel next contends that the “factors support an equal division.” The trial
court is not required to divide community property equally, and we must presume that
the trial court properly exercised its discretion in dividing the marital estate. Murff,
615 S.W.2d at 699; Alsenz, 101 S.W.3d at 655. We must uphold the judgment on any
legal theory supported by the evidence. Murff, 615 S.W.2d at 699; W.E.R., 669
S.W.2d at 717; Wilson v. Wilson, 132 S.W.3d 533, 537 (Tex. App.—Houston [1st
Dist.] 2004, pet. denied). The factors we consider include: (1) the education of the
parties; (2) the spouses’ relative earning capacity; (3) their relative financial condition
and obligations; (4) the size of their separate estates; (5) the nature of the community
property, (6) fault in the breakup of the marriage, and (7) benefits that a party not at
fault would have derived from the marriage, had it continued. Murff, 615 S.W.2d at
699; Alsenz, 101 S.W.3d at 655. 
          The testimony shows that Daniel and Thu each have bachelor’s degrees. The
record shows that Thu’s earnings historically have been higher than Daniel’s. 
Specifically, in 1998, Thu earned $31,824 more than Daniel earned; in 1999, Thu
earned $50,535 more; in 2001, Thu earned $180,997 more; in 2004, Thu earned
$107,535 more; and in 2005, Thu earned $67,071 more. This factor militates against
awarding a larger proportion of the community estate to Thu. 
          Daniel admitted at trial, however, and there is ample evidence in the record to
support, that Daniel engaged in an extramarital relationship involving deceit and that
he intentionally concealed financial transactions from Thu. Through his testimony
at trial, Daniel conceded that he had been “dishonest” and “unfaithful,” and had, for
years, maintained a relationship with Zhili that had included surreptitiously traveling
to Florida and Hawaii with her and transfers of community funds to Zhili. In
addition, the record shows that Daniel convinced Thu to leave their marital home and
to move to into a leased condominium in downtown Houston, at a cost to the
community estate of $1,700 a month, so that Daniel could live closer to Zhili. Daniel
testified that a disproportionate division of the community estate in favor of Thu was
appropriate, based on his conduct. 
          These are factors tending to favor the disproportionate award. See Twyman v.
Twyman, 855 S.W.2d 619, 625 (Tex. 1993). The trial court may consider a spouse’s
dissipation of the community estate as well as any misuse of community property. 
Vannerson v. Vannerson, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.]
1993, writ denied); see Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998)
(stating that wasting of community assets may be considered). Further, when, as here,
one spouse not only deprives the other of community assets, but does so with
dishonesty and intent to deceive, the trial court may consider such heightened
culpability in its division. Schlueter, 975 S.W.2d at 589; Boaz v. Boaz, 221 S.W.3d
126, 133 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Here, Thu may recover not
only her share of the property that existed in the community at the time of the divorce,
but also that which was improperly depleted from the community estate. See
Schlueter, 975 S.W.2d at 589. 
          Daniel specifically complains that the trial court (1) overvalued the Hawaii
timeshare; (2) “overvalued the ExxonMobil Stocks/Options” when it accepted Thu’s
value of $130,000; (3) failed to credit Daniel for $95,474 in attorney’s fees; (4)
charged Daniel for $85,440 in undisclosed liquid assets without sufficient evidence;
and (5) “gave a double recovery for fraud when there should have been none at all.”



          In a divorce proceeding, the ultimate and controlling issue is whether the trial
court divided the property in a “just and right manner,” pursuant to the Family Code. 
See Tex. Fam. Code Ann. § 7.001; Rafferty v. Finstad, 903 S.W.2d 374, 376 (Tex.
App.—Houston [1st Dist.] 1995, writ denied). The valuation of specific property is
not an ultimate issue. Rafferty, 903 S.W.2d at 376; Finch v. Finch, 825 S.W.2d 218,
221 (Tex. App.—Houston [1st Dist.] 1992, no writ). Disparate divisions exceeding
70 percent to one spouse and 30 percent or less to the other have been upheld where,
as here, the facts so warrant. See Sprick v. Sprick, 25 S.W.3d 7, 14 (Tex. App.—El
Paso 1999, no pet.) (holding that award of 77 percent of net assets of community to
wife was equitable); Thomas v. Thomas, 603 S.W.2d 356, 358 (Tex. App.—Houston
[14th Dist.] 1980, no writ) (holding that 70/30 division did not constitute an abuse of
discretion); Cluck v. Cluck, 647 S.W.2d 338 (Tex. App.—San Antonio 1982, writ
dism’d); Huls v. Huls, 616 S.W.2d 312 (Tex. Civ. App.—Houston [1st Dist.] 1981,
no writ); Bokhoven v. Bokhoven, 559 S.W.2d 142 (Tex. Civ. App.—Tyler 1977, no
writ). 
 
          The issue before us is not whether we might have reached a different decision. 
The question is whether some evidence of a substantive and probative character
supports the trial court’s decision. See Gainous, 219 S.W.3d at 103 (stating trial
court’s judgment must be affirmed if it can be upheld on any legal theory that finds
support in evidence). Given that the evidence supports the trial court’s judgment, we
hold that the trial court did not abuse its discretion in dividing the assets as it did. See 
Alsenz, 101 S.W.3d at 654–55 (stating that division will not be disturbed on appeal
without clear abuse of discretion); Mai, 853 S.W.2d at 618 (stating that, under abuse
of discretion standard, legal and factual insufficiency are not independent reversible
grounds, but are relevant factors in assessing whether trial court abused its
discretion).
          Accordingly, we overrule Daniel’s fourth issue.
Characterization of Property
          In his first issue, Daniel contends that “[t]he trial court improperly divested
[him] of his separate property interest in the Savings Plan and IRA.” Daniel contends
that the trial court improperly characterized his ExxonMobil Savings Plan (the
“Plan”) as community property.
          The trial court has no discretion to divest a spouse of his separate property. 
Cameron v. Cameron, 641 S.W.2d 210, 215 (Tex. 1982). Separate property includes
property owned or claimed by the spouse before marriage, property acquired by the
spouse during marriage by gift, devise, or descent, and recover for personal injuries. 
Tex. Fam. Code Ann. § 3.001 (Vernon 2006). Such property remains that spouse’s
separate property during and after the marriage. Pace v. Pace, 160 S.W.3d 706, 711
(Tex. App.—Dallas 2005, pet. denied).
          Only community property is subject to the trial court’s division. Osborn v.
Osborn, 961 S.W.2d 408, 413–14 (Tex. App.—Houston [1st Dist.] 1997, writ
denied). “Community property consists of the property, other than separate property,
acquired by either spouse during marriage.” Tex. Fam. Code Ann. § 3.002 (Vernon
2006). Property possessed by either spouse during or upon the dissolution of their
marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a)
(Vernon 2006). 
          To overcome the community property presumption, a spouse claiming assets
as separate property is required to establish their separate character by clear and
convincing evidence. Id. § 3.003(b); McElwee v. McElwee, 911 S.W.2d 182, 188
(Tex. App.—Houston [1st Dist.] 1995, writ denied). “Clear and convincing” evidence
means the measure or degree of proof that will produce in the mind of the trier of fact
a firm belief or conviction as to the truth of the allegations sought to be established. 
In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002); Slaton v. Slaton, 987 S.W.2d 180, 182
(Tex. App.—Houston [14th Dist.] 1999, pet. denied). When the burden of proof at
trial is by clear and convincing evidence, we apply a higher standard of legal and
factual sufficiency review. In re J.F.C., 96 S.W.3d at 265–66; In re C.H., 89 S.W.3d
17, 26 (Tex. 2002). 
          The spouse claiming separate property must trace and clearly identify the
property claimed to be separate. Boyd, 131 S.W.3d at 612 (citing Estate of Hanau v.
Hanau, 730 S.W.2d 663, 667 (Tex. 1987)). Tracing involves establishing the
separate origin of the property through evidence showing the time and means by
which the spouse originally obtained possession of the property. Id. (citing Ganesan
v. Vallabhaneni, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied)). 
          The inception of title doctrine fixes the character of property interests at the
time the party first acquires a right or claim to the property; title need not be vested
at such time. See, e.g., Stavinoha v. Stavinoha, 126 S.W.3d 604, 613 (Tex.
App.—Houston [14th Dist.] 2004, no pet.). “Separate property will retain its
character through a series of exchanges” if the party asserting separate ownership
traces the assets back to property that, because of the time and manner of acquisition,
is separate in character. Cockerham v. Cockerham, 527 S.W.2d 162, 168 (Tex. 1975). 
If the evidence shows that separate and community property “have been so
commingled as to defy resegregation and identification, the community presumption
prevails.” Hanau, 730 S.W.2d at 667. Any doubt as to the character of property
should be resolved in favor of the community estate. Boyd, 131 S.W.3d at 612. 
 
          a.       The Plan
          Daniel presented, as his evidence of his separate interest in the Plan, (1) exhibit
21, Plan statements dated February 1, 1995 through December 1996; (2) exhibit 22a,
which Daniel refers to as his “tracing document”; and (3) his testimony.
          Daniel and Thu married on February 1, 1995. Daniel presented a Plan
statement dated February 1, 1995 (“Statement”) as evidence of his separate property
interest in the Plan. Daniel contends that the Statement shows that he owned 779
shares as his separate property prior to marriage. 
          The Statement reflects a series of columns, each depicting a number of trustee’s
shares, and includes a column titled, “Total shs/units,” which reflects the total
trustee’s shares.


 The total of the trustee’s shares, as reflected in the table (4 + 315
+ 460) is 779. Although the trustee’s shares figures are not preceded by dollar signs,
the figure under the “Total shs/units” column is preceded by a dollar sign. The trial
court concluded that Daniel’s interest was $779, rather than 779 shares. Daniel
complained in the trial court that the dollar sign was simply a typographical error;
however, the court refused to consider his contention. Ten days after trial, Daniel
submitted an affidavit from the custodian of records for the Plan, explaining the error. 
The affidavit states, “These schedules inadvertently and incorrectly had dollar sign
inserted under the column ‘Total shs/units.’ The number under that column should
not have read as a dollar amount, but rather as the total number of shares owned.” A
corrected schedule appears in the clerk’s record. On appeal, Daniel complains that
“[t]he trial court relied on an immaterial formatting error in the Savings Plan
statements and determined that the 779 shares were not shares, but dollars.” 
          Our review of the record shows that we need not resolve this issue because, as
Thu contends, Daniel conceded in his motion for new trial that the Statement was,
nevertheless, inaccurate with regard to the number of shares. In his motion for new
trial, Daniel stated, “The savings plan balances were calculated from the wrong date;
they should have been calculated effective January 31 of the year in question, not
February 1.” More importantly, Daniel conceded, “The difference in the date resulted
in an inaccuracy as to the actual number of shares—that is, it showed more shares in
the plan than actually were in the plan as of January 31 of each year.” Hence, Daniel
failed to carry his burden to establish his separate property interest by clear and
convincing evidence.
          The Statement also reflects a loan balance of approximately $20,000 against
the account, which Daniel testified was taken prior to marriage, affected the actual
balance of the account, and was not paid back until after he and Thu married. 
          Daniel also submitted, as evidence of his separate property interest, his own
computations, exhibit 22a, to which he referred at trial as his “tracing document.” 
Daniel testified at trial, however, that his computations in the tracing document were
based on the 779 shares reflected in the February 1, 1995 Statement. The record
shows that Daniel has conceded that the 779 shares reflected in the Statement is
inaccurate. Hence, we cannot conclude that the trial court erred by implicitly
concluding that Daniel’s tracing document did not constitute clear and convincing
evidence of Daniel’s separate property interest. 
          Daniel contends on appeal that, without regard to the Statement or the tracing
document, his testimony at trial was sufficient to establish that 779 shares constituted
his separate property. Daniel testified that he was employed at Exxon and
participated in the Savings Plan for six years prior to February 1, 1995, the date he
married Thu; that he owned 779 shares of stock on that date; that, in 1997 and 2001,
the shares underwent two, two-for-one stock splits; and that his interest became 3,116
shares.


 Mere testimony that property was purchased with separate funds, without
any tracing of the funds, is insufficient to rebut the community presumption. Boyd,
131 S.W.3d at 614–17; Zagorski v. Zagorski, 116 S.W.3d 309, 316 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied); McElwee, 911 S.W.2d at 188. 
Moreover, the record reflects that Daniel has conceded that an interest of 779 shares
prior to marriage is inaccurate. Hence, we cannot conclude that the trial court erred
by implicitly concluding that his testimony did not constitute clear and convincing
evidence of his separate property interest.
           Daniel also contends that the total value of the Plan at the time of trial, July 6,
2007, was $810,250; that his separate property interest was $285,473; and that the
community property interest was $524,777. As Thu contends, however, Daniel does
not direct us to anyplace in the record in which he raised these calculations in the trial
court. Hence, nothing is presented for our review. See Tex. R. App. P. 33.1.
          The record shows that the trial court accepted, as the value of the Plan at the
time of trial, the sum of $830,000. The court ordered that Daniel take $260,000 and
that Thu take $570,000. We cannot conclude on this record that the trial court erred. 
Daniel did not overcome the presumption that the Savings Plan constituted
community property. Further, Daniel did not provide clear and convincing evidence
of a separate property interest.
          b.       Wells Fargo IRA
          Daniel also contends that the trial court abused its discretion by divesting him
of his Wells Fargo IRA, which he owned before marriage. The record shows that
Daniel testified that the Wells Fargo IRA is his separate property. The record shows
that Daniel’s Wells Fargo IRA is included in Thu’s inventory and appraisement as a
community asset and that it was awarded to Daniel as part of his portion of the
community property. The final decree does not mention the IRA or award any
interest in the IRA to Thu. 
          Here, again, Daniel’s testimony that the IRA is separate property was
insufficient to rebut the community presumption. See Boyd, 131 S.W.3d at 616. 
Moreover, to prevail on a mis-characterization challenge, Daniel must establish not
only that the trial court erred, but that this error caused sufficient harm to constitute
an abuse of discretion. See Long v. Long, 234 S.W.3d 34, 37 (Tex. App.—El Paso
2007, pet. denied) (mis-characterization of community property as separate property
is not reversible unless mis-characterization had more than de minimis effect on just
and right division). Daniel has not made any attempt to meet his burden to show that
he was harmed by having been awarded the IRA in lieu of any other property. See
Magill v. Magill, 816 S.W.2d 530, 533 (Tex. App.—Houston [1st Dist.] 1991, writ
denied). 
          Accordingly, Daniel’s first issue is overruled.
Reimbursement
          In his third issue, Daniel contends that “[t]he evidence is legally and factually
insufficient to support $70,189 in reimbursement to [the] community for waste.” 
 
           In its decree, the trial court found that Daniel committed fraud and waste, and
it ordered that Daniel pay, “from his separate property awarded herein,” $70,189 to
Thu, to be taken as her separate property, as follows:
W–7. The Court FINDS that [Daniel] has committed fraud on the
community estate and wasted community assets, and IT IS
THEREFORE ORDERED that [Thu] is awarded a judgment against
[Daniel’s] separate property awarded herein, to be taken as her sole and
separate property, a sum total of $70,189.00, together with interest as the
maximum rate permitted by law from the date the Court signs his Order;
for which let execution issue.It is well-settled that a trial court may award a money judgment to one spouse
against the other to achieve an equitable distribution of the community estate. 
Schlueter, 975 S.W.2d at 588. A trial court may award damages for a spouse’s
wasting of community assets or fraud on the community; however, such personal
judgment is a means of recoupment and is not awarded as independent damages. Id.
at 589. An injured spouse may recoup not only her share of the property existing in
the community at the time of the division, but also that which was improperly
depleted from the community estate. Id. 
           A party may bring a claim for reimbursement of payments by one marital
estate to satisfy unsecured liabilities of another marital estate.


 A trial court resolves
claims for reimbursement under equitable principles.


 An equitable right of
reimbursement arises when the funds or assets of one estate are used to benefit and
enhance another estate without itself receiving some benefit. Vallone v. Vallone, 644
S.W.2d 455, 458 (Tex. 1982). The party seeking reimbursement has the burden of
pleading and proving that the expenditures were made and that they are reimbursable.
Id. at 459. Permissible reimbursement may run from community estate to separate
estate, from separate estate to community estate, or from separate estate to separate
estate. Alsenz, 101 S.W.3d at 655. A trial court’s discretion in evaluating a claim for
reimbursement is as broad as that discretion exercised by a trial court in making a just
and proper division of the community estate. Penick v. Penick, 783 S.W.2d 194, 198
(Tex. 1988).  
           The record shows that Daniel and Thu, “by agreement,” each submitted an
inventory and proposed property division, which were admitted at trial. Once an
inventory and appraisement is admitted, it may be considered as evidence before the
court. See Barnard v. Barnard, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004,
pet. denied). Further, this court has held that testimony alone can suffice as evidence
to establish a reimbursement claim. See Sheikh v. Sheikh, 01-05-00218-CV, 2007 WL
3227683, at *7 (Tex. App.—Houston [1st Dist.] Nov. 1, 2007, no pet.) (mem. op.).
 
          The record shows that Thu itemized in her proposed property division that
Daniel wasted $70,189.00 of the community estate as follows:
REIMBURSEMENT TO COMMUNITY/WASTE



Loan against 401K after meeting [Zhili]

$20,000



Gifts to [Zhili]

$3,055



Amex payment

$3,900



Hawaii vacations with [Zhili]

$9,776



Florida Disney trips with [Zhili]

$3,787



Husband Family Phone Plan with [Zhili]

$2,671



Reimbursement to ECCU

$27,000




          First, Daniel testified that, in March 2005, he took a $20,000 payroll loan and
deposited it into a Wells Fargo bank account that was solely in his name. The same
month, Daniel made three online transfers of $1,500 from that account into Zhili’s
Wells Fargo account. The testimony of Daniel and Zhili shows that Daniel
“surprised” Zhili with a 50-inch plasma television, valued at $2500, and DVD player.
Daniel also conceded at trial that he had, since 2004, maintained a separate cellular
telephone account with Zhili. Zhili testified that the purpose of the separate cellular
telephones was to conceal the relationship from Thu. 
          Daniel does not deny that these transactions took place. He directs us, rather,
to his testimony explaining that he used the $20,000 for community purposes; that the
$1,500 transfers to Zhili were actually for her to give to his mother; that Zhili
reimbursed him for the television and DVD; and that Zhili paid for the cellular
telephone. 
          There is some evidence to support the trial court’s award for reimbursement of
these items. At most, Daniel presents conflicting evidence. The trial court chose to
credit Thu’s testimony. The factfinder is the sole judge of the credibility of the
witnesses and the weight to give their testimony. See Wilson, 168 S.W.3d at 819;
Cain, 709 S.W.2d at 176. 
          Regarding the vacations to Hawaii and Florida, Daniel and Zhili each admitted
at trial that they had surreptitiously traveled together to Hawaii and to Florida, and
they testified concerning the details of the accommodations and the duration of their
stays. Although they each testified that Zhili paid the expenses, Zhili also testified
that she was unemployed until March 2005. Zhili testified that she paid the expenses
from her savings. Daniel did not dispute the amount of Thu’s claim for
reimbursement; rather, he generally denied having expended any funds. Daniel
contends that Thu’s testimony to support the amounts she listed in her inventory is
speculative, at best, and that she failed to produce any documentary evidence to
support her claims for reimbursement.
          Thu’s inventory, which was admitted at trial and properly before the court, and
her testimony constitute some evidence of Daniel’s expenditures. See Sheikh, 2007
WL 3227683, at *7 (concluding that wife’s testimony constitutes some evidence of
transfers from community estate). The absence of documentary evidence does not
render Thu’s testimony incompetent; rather, it goes to the credibility of her testimony
and the weight to be accorded it. See In re Doe 4, 19 S.W.3d 322, 325 (Tex. 2000);
Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 n.2 (Tex. 1992) (stating that
absence of documents to support opinions and estimates goes to weight of evidence). 
Moreover, Thu testified that she did not have access to some of Daniel’s financial
records, and Daniel admitted at trial that he had concealed financial transactions from
Thu. 
          In rendering its order of reimbursement, the trial court chose to disbelieve
Daniel and Zhili, and chose to believe Thu. We are not permitted to interfere with the
factfinder’s resolution of conflicts in the evidence or to pass on the weight or
credibility of a witness’s testimony. See Wilson, 168 S.W.3d at 827; Zagorski, 116
S.W.3d at 317–18 (stating that credibility of husband and wife in divorce action falls
strictly within purview of trial court). Daniel failed to provide the trial court with any
alternative, and the trial court arrived at its own estimation of the total amount
wrongfully spent. See Morrison v. Morrison, 713 S.W.2d 377, 380 (Tex.
App.—Dallas 1986, writ dism’d) (concluding that husband’s failure to document
transactions involving his admittedly having taken trips to Hawaii with other women
gave trial court broad discretion to “arrive at its own estimation of the total amount
wrongfully spent”). The trial court could have reasonably inferred that funds were
wrongfully diverted from the community estate which could not be discovered
because of the lack of records. See id.
          Concerning the reimbursement of $3,900 for the American Express bill, 
because the trial court made no separate findings of fact or conclusions of law, we
must presume that the trial court made all the necessary findings to support its
judgment. See Boyd, 131 S.W.3d at 612. Thu’s sworn inventory, which was admitted
into evidence by agreement, constitutes some evidence to support the trial court’s
award. See Barnard, 133 S.W.3d at 789. Further, Daniel has not shown that a
discrepancy in this regard, if it exists, would materially affect the trial court’s
property division. See Jacobs, 687 S.W.2d at 732–33; see also McElwee, 911 S.W.2d
at 189 (mistake in property division at divorce which has de minimis effect on overall
division not reversible error).
          Finally, the record shows that the $27,000 reimbursement is for Thu’s
attorney’s fees in the first trial that resulted in a mistrial. The record shows that the
trial court ordered that the amount be paid from the community ECCU account. 
Daniel complains on appeal of a double recovery. As Thu contends, however, Daniel
does not direct us to anyplace in the record in which he presented his complaint to the
trial court. As such, the point is waived. See Tex. R. App. P. 33.1.
 
          We cannot conclude that the trial court abused its broad discretion with regard
to the reimbursement claims, as part of its overall division of the estate. See Penick,
783 S.W.2d at 198; Mai, 853 S.W.2d at 618 (stating that, under abuse of discretion
standard, legal and factual insufficiency are not independent reversible grounds, but
are relevant factors in assessing whether trial court abused its discretion).
          Accordingly, Daniel’s third issue is overruled.
Penalty
          In his second issue, Daniel contend that “[t]he trial court abused its discretion
by awarding a $100,000 penalty against Daniel for wasting of community assets and
fraud on the community estate.” Thu contends that there was “no money judgment”
for $100,000 against Daniel.
          Daniel directs us to the trial court’s rendition of property division, which it
issued prior to the Final Decree, and to statements it made on the record.
          In its rendition of property division, the trial court ordered that Daniel take
$260,000 of his ExxonMobil Savings Plan and that Thu receive $570,000 of the Plan.
In addition, however, the trial court ordered, 
[f]or wasting of community assets and fraud on community estate:
$100,000 to petitioner from respondent’s estate. Such award shall be
out of Exxon Mobil Savings Plan and 401K Plan. Therefore, Petitioner
shall receive $670,000 of 401K Plan as listed on petitioners I &A, Ex.
5a and respondent’s share shall be reduced to $160,000. 
 
At a hearing on Daniel’s objections to the entry of judgment on the decree, the trial
court explained, “Well, what I did was I gave them each a fairly equal and I don’t
remember if it was exactly equal on his plan [sic] and as the division of the estate. 
And then I came back as a penalty and awarded her a hundred thousand of the estate
and the rendition of the division of the estate, it was fairly equal. Then I came back
as a penalty and awarded her a hundred thousand. [sic]” Daniel asked again, “So that
was a penalty?” And, the trial court responded, “Right.” 
          First, we cannot consider the trial court’s recitations in its rendition. It is
well-settled that even recitations in the judgment itself of findings of fact and
conclusions of law cannot be considered as a substitute for separately filed findings
of fact and conclusions of law. Willms v. Am. Tire Co., 190 S.W.3d 796, 802 (Tex.
App.—Dallas 2006, pet. denied); see also Chacon v. Chacon, 222 S.W.3d 909, 916
(Tex. App.—El Paso 2007, no pet.) (concluding, in divorce case, that prejudgment
letter rulings do not constitute formal findings of fact and will not substitute as such). 
Such statements do not afford any basis upon which a losing party may attack a trial
court’s judgment. 
          Next, oral comments from the bench cannot substitute for written findings of
fact and conclusions of law. See In re Jane Doe 10, 78 S.W.3d 338, 340 n. 2 (Tex.
2002). In E.A.S., the appellant complained that the trial court had improperly
modified his child support obligation on the basis that the appellant was intentionally
underemployed. 123 S.W.3d 565, 568 (Tex. App.—El Paso 2003, pet. denied). No
findings of fact and conclusions of law were filed. Id. at 569. Rather, the appellant
relied upon oral statements made by the trial court on the record, finding that the
appellant was underemployed and finding the amount that the appellant had the
ability to earn. Id. The appellate court refused to consider the trial court’s oral
statements, concluding that such statements could not be accepted as findings of fact. 
Id. (citing W.E.R., 669 S.W.2d at 716). The court concluded, “We recognize that this
rule may appear hypertechnical given the trial court’s comments but it is not within
our province to disregard it.” Id. at 570. The court then considered whether there
was evidence in the record to support the trial court’s ruling and, concluding that
there was such evidence, affirmed the trial court’s judgment. Id. at 570–72
(recognizing that, in the absence of findings, trial court’s judgment must be affirmed
if it can be upheld on any legal theory that finds support in evidence).
          Here, as in E.A.S., we cannot consider the trial court’s oral statements as a
substitute for properly filed findings of fact and conclusions of law.
          The Final Decree before us reflects only that the trial court made an unequal
distribution, in the form of an award Thu of $670,000 of Daniel’s $830,000
ExxonMobil 401K Plan. We cannot conclude that the trial court abused its discretion
on the ground Daniel asserts, that is, by assessing a $100,000 “penalty” against him.
          Accordingly, Daniel’s second issue is overruled.
 
CONCLUSION

          We affirm the judgment of the trial court.




 
                                                             Laura Carter Higley 
                                                             Justice

Panel consists of Justices Jennings, Higley, and Massengale.